IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT
AMARILLO DIVISION

| | | |
|---|---|---|
| Cassie Pointer and | § | |
| Darrell Thacker, individuals | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| vs. | § | CASE NO. 2:09-CV-83-J |
| | § | |
| Verla Varnell Barrett, individually | § | |
| and d/b/a Big V Construction | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFFS' AND DEFENDANT'S JOINT MOTIONS FOR COURT APPROVAL OF COLLECTIVE ACTION SETTLEMENT, SETTLEMENT DISTRIBUTION AND PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF PLAINTIFFS' ATTORNEYS FEES AND LITIGATION EXPENSES AND BRIEF IN SUPPORT**

Philip R. Russ, SBN 17406000
LAW OFFICES OF PHILIP R. RUSS
2700 S. Western, Suite 1200
Amarillo, Texas 79109
806-358-9293 - Telephone
806-358-9296 - Facsimile
E-Mail: philiprruss@russlawfirm.com

Mark Laney, SBN 11892500
LANEY & MYATT LAW FIRM
600 Ash Street
Plainview, Texas 79072-8093
Tel. (806) 293-2618
Fax (806) 293-8802
E-Mail: mark@laneymyatt.com

ATTORNEYS FOR THE PLAINTIFFS

Kelly Utsinger, Esq.
UNDERWOOD WILSON BERRY STEIN & JOHNSON
500 S. Taylor Suite 1200
P.O. Box 9158
Amarillo, Texas 79105-9158
806-376-5613 - Telephone
806-379-0316 - Facsimile

Ann Manning, Esq
UNDERWOOD WILSON BERRY STEIN & JOHNSON
1111 West Loop 289
Lubbock, Texas 79416-5029
806-793-1711 - Telephone
806-793-1723 - Facsimile

ATTORNEY FOR THE DEFENDANT

Dated July 30, 2010

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION
SETTLEMENT AND SETTLEMENT DISTRIBUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS FEES
AND LITIGATION EXPENSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BRIEF IN SUPPORT OF MOTIONS FOR APPROVAL OF
COLLECTIVE ACTION SETTLEMENT, SETTLEMENT
DISTRIBUTION AND ATTORNEYS FEES AND
LITIGATION EXPENSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    a.    BACKGROUND OF THE LITIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    b.    THE PROPOSED SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    c.    THE PROPOSED SETTLEMENT DISTRIBUTION . . . . . . . . . . . . . . . . . . . . 5

    d.    ARGUMENT AND AUTHORITIES FOR APPROVAL
          SETTLEMENT, SETTLEMENT DISTRIBUTION AND
          FEES AND EXPENSES REQUESTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        i.    Court Approval of the Settlement and Settlement
            Distribution is Requested Pursuant to Fed. R. Civ. P. 23(e) . . . . . . . . . . 7

        ii.    Legal Standards for Court Approval of a
            Class Action Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        iii.    The Court Should Approve the Settlement in this Case . . . . . . . . . . . . . 15

            (1)    The Proposed Settlement Resulted from Fair
                 and Honest Negotiations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            (2)    Serious Questions of Law and Fact Cast doubt
                 on the Ultimate Question . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

(3) The Value of an Immediate Recovery Outweighs the Possibility of Future Relief After Protracted and Expensive Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

(4) The Parties Believe the Settlement is Fair and Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

iv. The Court Should Approve the Requested Attorneys fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

v. Analysis of *Johnson* Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

vi. Litigation Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## TABLE OF AUTHORITIES

<u>Cases:</u>

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S. Ct. 745,
    62 L. Ed. 2d 676 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Camden 1 Condo. Assoc., Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) . . . . . . . . . . . . . . . . . 21

*Carson v. Am. Brands, Inc.*, 450 U.S. 79, 101 S. Ct. 993,
    67 L. Ed. 2nd 59 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*EEOC v. Gulfstream Aerospace Corp.*, No. 402CV243
    (S.D. Ga. May 12, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 24

*Erie County Retirees Ass'n v. County of Erie*,
    192 F. Supp. 2d 369 (W.D. Pa. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . 22

*In re Rite Aid Corp. Sec. Litig.*, 2005 WL 697461, *2
    (E.D. Pa. March 24, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Safety Components, Inc.*, 166 F. Supp. 2d 72 (D. N.J. 2001) . . . . . . . . . . . . . . . . . . . . . . 19

*Johnson v. City of Tulsa*, 2003 WL 24015151
    (N.D. Okla. May 12, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322 (10th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Lopez v. City of Santa Fe*, 206 F.R.D. 285 (D.N.M. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Malchman v. Davis*, 706 F.2d 426 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Oliver's Sports Center, Inc. v. Nat'l Standard Ins. Co.,*
    615 P.2d 291 (Okla. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
    (314 F.3d 1180 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Uselton v. Commercial Lovelace Motor Freight, Inc.,*
    9 F.3d 849 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Wilkerson v. Martin Marietta Corp.,* 171 F.R.D. 273 (D. Colo. 1997) . . . . . . . . . . . . . . . . . . . . 16

*Williams v. Vukovich,* 720 F.2d 909 (6th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Woodall v. Drake Hotel, Inc.,* 913 F.2d 447 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

**Statues:**

29 U.S.C. § 621 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 8

29 U.S.C. § 216(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 8

**Rules:**

Fed R. Civ. P. 54(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed R. Civ. P. 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8

Fed R. Civ. P. 23(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed R. Civ. P. 23(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Other Authorities:**

4 Alba Conte and Herbert Newberg, Newberg on Class Actions
   § 11.41 (4th ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
   *Federal Practice and Procedure* § 1797.1 (2d ed. 1986) . . . . . . . . . . . . . . . . . . . . . . . 20

## JOINT MOTION FOR APPROVAL OF COLLECTIVE
## ACTION SETTLEMENT AND SETTLEMENT DISTRIBUTION

On July 14, 2010, the parties attended a Court-ordered Settlement Conference before the

Honorable Tad Fowler, pursuant to the Court's Ordered Mediation (Dkt. 46). After the

conclusion of the settlement conference, a settlement agreement in the amount of $30,000.00 was

reached, subject to the approval of the Court. Plaintiffs and Defendant jointly move the Court for

an Order approving a final settlement of this collective action against Defendant and a settlement

distribution. In this Motion, Plaintiffs specifically request that:

(1)     the Court issue an Order pursuant to the provisions of Fed R. Civ. P. 23(e)
        requiring Plaintiffs' counsel to send, by First Class United States Mail, Notice of
        Proposed Collection Action Settlement and Hearing;[1]

(2)     the Court approve the settlement and settlement distribution schedule after giving
        Plaintiffs the opportunity at the hearing to voice their objections to the settlement,
        the motion for attorney fees and litigation expenses, and the proposed distribution.

## PLAINTIFFS' UNOPPOSED MOTION FOR AWARD
## OF ATTORNEYS FEES AND LITIGATION EXPENSES

Pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, and to the

contractual agreement between Plaintiffs' counsel and the Named Plaintiffs, Plaintiffs' counsel

respectfully move the Court for an award of

(1)     litigation expenses in the amount of $4,809.86; and

(2)     reasonable attorneys fees in the amount of $10,076.06.

The litigation expenses are the expenses actually paid and incurred by Plaintiffs' counsel

during the course of this litigation and comports with the written contingent fee contract between

---

[1]The proposed Notice of Proposed Collective Action Settlement and Hearing is attached hereto
*[Ex. 1.]* The proposed settlement distribution schedule is submitted under seal. *[Ex. 2]* An Order
Directing Plaintiffs' counsel to issue the Notice to the Plaintiffs is submitted simultaneously herewith.

1

counsel and the Named Plaintiffs who filed this action in their individual capacities and signed

contracts by 11 opt-in Plaintiffs with identical terms for a total of 13 signed contracts. *[Affidavit*

*of Philip R. Russ, Ex. 3]* The amount of requested attorneys fees likewise comports with the

percentage contractually agreed upon by counsel and the Named Plaintiffs.[2] It is a reasonable fee

in light of the size of this action, the complexities and risks involved, the amount of time spent,

the successes achieved the necessity of a second mail-out, the settlement amount obtained and

the lodestar amount.  Furthermore, it would not be fair to the Named Plaintiffs who initiated this

suit and the opt-ins who signed contracts for any other opt-in Plaintiffs to pay less than the

contractually bound Named Plaintiffs and contractually bound opt-in plaintiffs.  Plaintiffs'

counsel advanced all costs associated with the suit and to date have not been reimbursed any of

their costs totaling $4,809.86.

**Counsel for Plaintiffs are authorized to state that Defendant and its counsel have no**

**objection to the foregoing Motion.**

## BRIEF IN SUPPORT OF MOTIONS FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT, SETTLEMENT DISTRIBUTION AND ATTORNEYS FEES AND LITIGATION EXPENSES

## I.    BACKGROUND OF THE LITIGATION

Defendant Verla Varnell Barrett d/b/a Big V Construction ("Big V") operates a company

in Quitaque, Texas, to provide construction services, maintenance, tree trimming and services

around and for electrical utilities high lines.  On April 1st, 2009, Plaintiffs filed suit to recover

unpaid overtime pay alleging that Big V required its non-exempt hourly employees to work over

---

[2]Plaintiffs' counsel entered into separate written contingent fee contracts with each of the Named Plaintiffs and 11 opt-in Plaintiffs. *[Ex. 3]*.  The contracts provide for an attorney fee of 40% of any Gross Recovery after the commencement of suit. *[¶ 3 of Ex. 1 to the Affidavit of Philip R. Russ (Ex. 3)]*.

forty (40) hours in a week but refused to pay them time and one half for hours worked over 40 - instead paying them at the straight rate and utilizing a "time bank" to carry hours worked over 40 over to weeks in which less hours were worked to avoid paying overtime.

Approximately one year and four months ago (April, 1st, 2009), Plaintiffs' counsel filed this action on behalf of two Plaintiffs in their individual capacities and on behalf of other, similarly situated employees at the Quitaque facility under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 701 *et seq* (Dkt 1). There are presently 2 Named Plaintiffs and 11 opt-ins.

On July 17, 2009, the Court entered an Order conditionally certifying this action as a collective action under 29 U.S.C. § 216(b), subject to the Defendant's right to move for decertification by a timely-filed motion after close of all discovery on liability [Dkt 17]. On the January 27, 2010, Plaintiffs filed a Second Motion for Supplemental Notice and Motion for Order Authorizing Notice to Potential Plaintiffs Similarly Situated Pursuant to 29 U.S.C. § 216(b) [Dkt. 31] due to defendant's failure to comply with the Original Order (Dkt. 17). Thereafter, on February 2, 2010, the Court entered another Order conditionally certifying this action as a collective action under 29 U.S.C. § 216(b) [Dkt 34]. The Court also authorized the Named Plaintiffs to issue a class notice to all hourly employees working for Big V out of the Quitaque, Texas facility who were non-exempt hourly worked for Big V. The Court-approved Class Notice stated in pertinent part:

> Plaintiffs, POINTER, et al are represented by the Law Offices of Philip R. Russ, a law firm in Amarillo, Texas, and Mark Laney, a law firm in Plainview, Texas. If you want to joint in this lawsuit, there lawyers will represent you. You will not have to pay these lawyers for their services unless the court awards you money. If that happens a reasonable amount will be deducted from your award to pay the

lawyers for their services representing the workers. If you would prefer to hire a different lawyer to represent you, you have the right to do so.

*[Ex. 4]*.

After receiving the Class Notice, 11 employees and former employees of Big V filed written consents to opt-in to the action, thereby electing to have Plaintiffs' counsel represent them. Thus, there are presently 11 opt-in Plaintiffs. Discovery on liability closed on June 4, 2010. As of the date of the settlement there are 13 Plaintiffs, including opt-ins.

## II.    THE PROPOSED SETTLEMENT

On May 10, 2010, Judge Robinson entered the Court's Order of Referral for Mediation ordering the parties to mediate this case and to permit the Plaintiffs to send designated representatives, along with the Plaintiffs' counsel, to the Court-ordered settlement conference of which four attended in person and the one lead plaintiff was available by phone. At the conclusion of the settlement conference, the Defendants offered $30,000.00 in exchange for a full and final settlement of this action as to all the Plaintiffs. After the Plaintiffs' representative discussed this offer with Plaintiffs' counsel, the Defendants $30,000.00 settlement offer was accepted, subject to this Court's Approval of the settlement, see settlement agreement filed under seal, Exhibit "A".

If the Court approves this settlement: (1) it will enter an Order dismissing with prejudice the individual and representative claims of all the Plaintiffs and dismissing with prejudice the defendants counterclaims against Plaintiffs; (2) each of the Plaintiffs shall be deemed to have constructively discharged all claims against Defendant and Defendant herewith constructively discharges all counterclaims made against Plaintiffs that were brought in this action, as if they

each had individually executed a release; (3) Defendant has already delivered a cashiers check for $30,000.00 which is being held in the Client Trust Account held by The Law Offices of Philip R. Russ, co-counsel for the Plaintiffs; and (4) The Law Offices of Philip R. Russ will thereafter issue settlement checks to each of the Plaintiffs according to the settlement distribution schedule, filed herewith under seal upon approval by the Court, Exhibit "A".

The Plaintiffs' representative (Cassie Pointer) did not attend  the mediation on June 14th, 2010, but Darrell Thacker, named Plaintiff, and Tina Ortiz, Heidi Maupin and Joe Maupin, opt-in's attended with Cassie Pointer available by phone.  Plaintiffs' counsel believe this settlement is fair and reasonable in light of the complexities of the case, the likelihood of success on the merits, the difficulty in collecting in the event of a recovery, the prospects of appeal on any judgment in the trial court, and the lengthy delays that such a process would inevitably entail. Plaintiffs' counsel are authorized to state that Defendants and their counsel concur that the settlement is fair and reasonable and the Defendants join in this motion seeking approval of the settlement.

## III.   THE PROPOSED SETTLEMENT DISTRIBUTION

The proposed settlement distribution to each Plaintiff is based upon calculating an equitable percentage for each Plaintiff of the net settlement proceeds available for distribution after deducting attorneys' fees and litigation expenses from the total settlement proceeds.  The equitable percentage for each Plaintiff is based upon calculating an estimated amount of wage loss for each Plaintiff by multiplying their weekly wage at the time they worked there up to the date of this settlement and the number of weeks that passed during their employment at the Big V to their termination date on the date upon which the defendant began paying overtime after this

5

suit was filed, which was the parties' projection calculated based on the date. The estimated individual wage loss is then divided by the total amount of wage loss for all Plaintiffs to arrive at an individual percentage for each Plaintiff. This percentage is then multiplied by the amount of net settlement proceeds available for distribution after deducting attorney fees and litigation expenses.

Once this individual portion of the net settlement fund is calculated, the proposed formula accounts for the sum due each Plaintiff from the fund. The distribution is to be equitably divided among all remaining Plaintiffs (including opt-ins) based upon their weekly wages and time of employment at Big V as that relates to the net proceeds available for distribution.

Based upon the foregoing, the proposed settlement distribution for each Plaintiff is calculated according to the following formula:

Individual Settlement Amount = A + B

Where:

| | |
|---|---|
| A = Weekly Wage x Weeks of Overtime Lost Based Upon Time in Service    x    Net Settlement Fund | |
| B = Total sum due each respective Plaintiff | |

Plaintiffs' counsel submit that this proposed formula for the distribution of settlement proceeds results in a fair and equitable distribution for all Plaintiffs. Although there may be other elements of potential damages, such as liquidated damages, and lost benefits, it is not feasible to attempt to account for all such elements of potential damage in the calculation of a settlement distribution given the uncertainty of recovering such damages and the divergence of facts necessary to prove such damages. Further, there may be other elements of potential mitigation of

6

damages, it is likewise not feasible to attempt to account for such elements of potential adjustment in the calculation of a settlement distribution given the divergence of facts necessary to prove such mitigation, the time and effort that would be required for each of the Plaintiffs to gather the documentation for such calculations, and the chance of errors and omissions in making such calculations.

IV.   **ARGUMENT AND AUTHORITIES FOR APPROVAL OF THE SETTLEMENT, SETTLEMENT DISTRIBUTION AND FEES AND EXPENSES REQUESTED**

      A.   **Court Approval of the Settlement and Settlement Distribution is Requested Pursuant to Fed. R. Civ. P. 23(e).**

"Opt-in" collective actions under § 216(b) are not identical in procedure or substance to "opt-out" class actions under Fed. R. Civ. P. 23.  One glaring difference is the absence of any provision in § 216(b) requiring court approval, after giving notice to all members of the Plaintiff class and opportunity to be heard, of a settlement or compromise.  *See Woodall v. Drake Hotel, Inc.*, 913 F.2d 447, 450-51 (7th Cir. 1990) (discussing the rationale for the absence of a provision for settlement of ADEA or FLSA class actions.  ADEA cases adopt the FLSA collective action methodology similar to the provisions of Fed. R. Civ. P. 23.  The presumptive rationale for the absence of such a provision is the fact that § 216(b) contemplates individual participation in the collective action.  Putative plaintiffs cannot participate in the class unless they file written consents to join the lawsuit.  Thus FLSA wage and hour class members are not "absent" in the way that a class member in an "opt-out" class action under Rule 23 may be absent.  The need for the protective requirement of notice, hearing and a court-approved settlement is not as acute.  *Id.*

Nevertheless, a number of courts have held that the settlement procedures of Rule 23(e)

should be applied to settlement of FLSA collective actions brought under § 216(b). *See, e.g.*

*Woodall*, 913 F.2d at 451-52 (stopping short of holding that Rule 23(e) should be applied

generally to all ADEA class actions which adopt the FLSA methodology, but reversing trial

court's entry of dismissal for reason of settlement when prior notice of the proposed settlement

had not been sent to opt-in class plaintiffs); *Erie County Retirees Ass'n v. County of Erie*, 192 F.

Supp. 2d 369 (W.D. Pa. 2002) (applying Rule 23(e) to ADEA class action settlement without

discussion of reasons for application). ADEA and FLSA wage and hour collective actions are

treated alike under § 216(b). Plaintiffs request the Court utilize the settlement provisions of Rule

23(e) in this action.

### B.     Legal Standards for Court Approval of a Class Settlement.

Rule 23(e)(1) provides that a class action may not be dismissed or compromised without

the approval of the Court and the notification of all class members:

(A)     The Court must approve any settlement, voluntary dismissal or
compromise of the claims, issues or defenses of a certified class.

(B)     The court must direct notice in a reasonable manner to all class members
who would be bound by a proposed settlement, voluntary dismissal or
compromise.

(C)     The court may approve a settlement, voluntary dismissal or compromise
that would bind class members only after a hearing and on finding that the
settlement, voluntary dismissal or compromise is fair, reasonable and
adequate.

Fed. R. Civ. P. 23(e)(1).

Section 16(b) of the FLSA allows the recovery of reasonable attorney's fees in addition to

any judgment awarded to an employee in a legal action against an employer. The award of

reasonable attorney's fees is authorized only in private suits and not in government suits. The

determination of a "reasonable" fee is left to the discretion of the trial courts. Naturally, this provision in the law encourages attorneys to take these kinds of cases.

It is mandatory to award reasonable attorney's fees to an employee who obtains judgment in a suit to recover back wages. With respect to the attorney's fee, the court has no discretion to deny it–the law's requirement of an award is mandatory and unconditional.[3] The mandatory award of attorney's fees may exceed the amount of wages owed to the employee. However, the district courts have discretion in the amount of attorney's fees to award. The Fifth Circuit outlined 12 factors which it suggested should be the basis for calculating attorney's fees:

(1)    Time and labor required;
(2)    Novelty and difficulty of the questions;
(3)    Skill requisite to perform the legal services properly;
(4)    The preclusion of other employment;
(5)    The customary fee in the community for similar work;
(6)    The fixed or contingent nature of the fee;
(7)    Time limitations imposed by the client or the circumstances;
(8)    The amount involved and the results obtained;
(9)    The experience, reputation and eligibility of attorneys;
(10)   The undesirability of the case;
(11)   The nature and length of the professional relationship with the client; and
(12)   Awards in similar cases.[4]

These criteria have been applied in many subsequent cases, yet the application of these factors does not lead to a specific dollar amount of attorney's fees. "A formula is necessary to translate the relevant factors into terms of dollars and cents."[5] The formula used in the calculation of

---

[3][Section 21:09]
*Wright v. Carriage,* 275 F2d 448 (CA4 1960); *Luther v. Z. Wilson, Inc. d/b/a Wilson Realtors,* 528 F Supp 1166 (D Ohio 1981); *Winkler v. American Sales & Management Foundation,* 96 Lab Caves (C.H.) ¶ 34,343 (D Ga 1983).

[4]*Johnson v. Georgia Highway Express, Inc.,* 488 F2d 714 (CA5 1974)

[5]*Copeland v. Marshall,* 641 F2d 880, 890 (CA DC 1980).

attorney's fees is the "lodestar" formula articulated by the Third Circuit in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*[6] The lodestar formula was developed with the Fifth Circuit's 12 factors in mind, but offered a more exact method of calculation than the imprecision that resulted from the 12 factors. The lodestar formula is essentially based on the market value of the legal services rendered. The "lodestar" is calculated by multiplying the number of hours expended by a reasonable hourly rate. This product (the "lodestar") is the fee from which a trial judge begins in determining the attorney's fees to be awarded.

---

### "LODESTAR" FORMULA

When the employee(s) prevails, reasonable attorney's fees are awarded using the "lodestar" method.

"Lodestar"
=
number of hours reasonably expended
x
reasonable hourly rate
* * * * *

The "lodestar" may be adjusted:

- Upward to account for the delay in receipt of payment;
- Upward or downward based on quality of representation;
- Downward for unnecessary work;
- Upward or downward based on the complexity or simplicity of a case

---

The first component of the "lodestar" formula is calculating the time reasonably expended. The determination by trial court of the amount of time reasonable expended is not an easy task. It is incumbent upon an attorney or a law firm to document the amount of work performed with some degree of specificity. Upon such documentation the district court sifts

---

[6]*Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F2d 161 (CA3 1973), subsequent decision 540 F2d 102 (CA3 1976).

through the record keeping and determines the amount of hours reasonably expended.  However, "[i]t does not follow that the amount of time actually expended is the amount of time reasonably expended."[7]  Thus, the trial court cannot simply add all the hours expended in the attorney's or law firm's records.  One court offered an example of hours that are not *reasonably* expended in its statement that "where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time."[8]  See Plaintiffs' counsels' Philip R. Russ' itemization of time x $300.00 per hour (which is $50.00 per hour less than the mediator) and the time of his paralegals and Mark Laney's time which yields a lodestar figure of at least $33,270.00 which is substantially more than the 40% contingency fee sought in this case, see   Exhibit "B".

The second component of the "lodestar" formula is the calculation of a reasonable hourly rate.  "The reasonable rate is that prevailing in the community for similar work."[9]  Yet there may be several different reasonable hourly rates for the different attorneys and different kinds of work in the case.  The court should take the necessary steps to determine the reasonable hourly rate, including review of documentation and possibly the holding of a hearing.[10]  After determining the reasonable hourly rate, the trial judge should construct a table to compute the "lodestar."  In this case plaintiffs' counsel are not seeking a loadstar upward adjustment of their fees but offer this methodology as a comparison to the reasonableness of the 40% contingent recovery being sought in this case.

---

[7]*Copeland v. Marshall*, 641 F2d 880, 871 (CA DC 1980).

[8]*Copeland v. Marshall*, 641 F2d 880, 871 (CA DC 1980).

[9]*Copeland v. Marshall, 641 F2d 880, 871 (CA DC 1980).*

[10]*Copeland v. Marshall*, 641 F2d 880, 871 (CA DC 1980).

11

| CALCULATING "LODESTAR" AMOUNT IN ATTORNEY'S FEES | | | | |
|---|---|---|---|---|
| Attorney and Type of Work | | Hours | Rate* | Total |
| Philip R. Russ<br>Mark Laney<br>Monica Peña | (See itemization)<br>- not included at this point<br>Assembling documents<br>charts and exhibit lists<br>- not included at this point | 110.9 | $300.00 | $33,270.00 |
| | | | Lodestar = | $33,270.00 plus |

The "lodestar" figure is just the starting point in determining reasonable attorney's fees to be awarded to the prevailing party. An adjustment in the "lodestar" may be appropriate in order that attorneys receive the proper amount of compensation. In this case the 40% contingency sought by Plaintiffs' counsel is substantially lower than the time spent reflected in the lodestar due to the modest recovery. The burden of proving that an adjustment is necessary is on the fee applicant.[11] The final award of attorney's fees may be a figure that has been adjusted up or down from the initial "lodestar" figure.

The Supreme Court held that fee shifting statutes no longer permit enhancement of a fee award beyond the "lodestar" amount to account for the fact that the party's attorneys were retained on a contingent fee basis.[12] The Court specifically held:

> "The position advocated . . . that contingency enhancement is appropriate in
> defined limited circumstances [ ] is rejected, since it is based upon propositions
> that are mutually inconsistent as a practical matter, would make enhancement turn
> upon a circular test for a very large proportion of contingency-fee cases, and could
> not possibly achieve its supposed goal of mirroring market incentives to attorneys

---

[11]Blum v. Stenson, 465 US 886 898, 79 L Ed 2d 891, 104 S Ct. 1541, 1548 (1984)

[12]City of Burlington v. Dague, 120 L Ed 2d 449, 112 S Ct. 2638 (1992)

to take cases."[13]

In its reasoning against the allowance of contingency fee enhancements, the Supreme Court noted that such enhancement would duplicate factors already accounted for in the "lodestar." The Court stated, "The risk of loss, in a particular case (and therefore the attorney's contingent risk) is the product of two factors, (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits."[14] The Court decided that the second factor, the difficulty of establishing the merits, is already contained within the "lodestar" and should not be taken into account a second time. As for the first factor, it *always* exists because no claim has a 100% chance of success. Thus, the Court reasoned that awarding a contingency enhanced because of this factor would encourage non-meritorious claims to be brought, Plaintiffs suggest that the amount of this settlement is compared to the damage model suggest this case is meritorious. The Court offered an example of two claims, one with a 20% merit and the other with an 80% merit. If a contingency enhancement is utilized, an attorney would prefer to take the 20% merit case because such a case would carry with it a multiplier of five times, while the 80% merit case would have a multiplier of only 1.25. Therefore, the Court concluded that contingency enhancements were counter to the objectives of the award of "reasonable fees."

At attorney's fee may be adjusted upward in order to account for the delay in receipt of payment for the services rendered. Court-awarded fees are usually received long after those services have been rendered. Thus, "a percentage adjustment to reflect the delay in receipt of

---

[13]City of Burlington v. Dague, 120 L Ed 2d 449, 112 S Ct. 2638 (1992).

[14]City of Burlington v. Dague, 120 L Ed 2d 449, 112 S Ct. 2638 (1992).

payment may be appropriate."[15] For example, in one case a district court used $100 per hour as the reasonable hourly fee for an attorney, even though counsel agreed to take the case of $75 per hour. The increase in the hourly rate was ordered in order to reflect the delay in collecting the fee since the case began.[16] In the case at bar Plaintiffs' counsel took the case strictly on a contingent basis and agreed to advance all costs to finance the case which Plaintiffs' counsel did.

The adjustment in the "lodestar" due to delay in payment can only be made upward. However, an adjustment based on the quality of representation can be made either upward or downward. "A quality adjustment is appropriate only when the representation is unusually good or bad, taking into account the level of skill normally expected of an attorney commanding the hourly rate used to compute the lodestar."[17] An enhancement of attorney's fees is appropriate only when the attorney has performed exceptionally well or obtained an exceptional result. Thus, a large dollar recovery does not necessitate a large award of attorney's fees. If a substantial monetary recovery is expected, such an expectation is reflected in the hourly rate used to compute the "lodestar," and no adjustment is necessary. Similarly, if an attorney performs competently, but not exceptionally, and yet charges a very high hourly rate, a decrease in the "lodestar" may be necessary to account for such a high hourly rate.[18] The lodestar may be adjusted downward if the results were less than expected, for unnecessary work or for relatively

---

[15]*Copeland v. Marshall*, 641 F2d 880, 871 (CA DC 1980), citing *Lindy Bros Building, Inc. f. American Radiator & Standard Sanitary*, 540 F2d 102 (CA3 1976)

[16]*Gary v. Health Care Services, Inc.*, 744 F Supp 277 (Md Ga 1990).

[17]*Copeland v. Marshall*, 641 F2d 880, 871 (CA DC 1980).

[18]Copeland v. Marshall, 641 F2d 880, 871 (CA DC 1980).

14

simple cases.[19] The instant case, which had a second mail-out and difficulty in obtaining discovery, is not a simple case.

In the neighboring United States Court of Appeals, the Tenth Circuit has also identified the following four factors that a district court should consider in determining whether a proposed settlement of a class action is fair, reasonable and adequate:

    (1)    whether the proposed settlement was fairly and honestly negotiated;

    (2)    whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

    (3)    whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

    (4)    the judgment of the parties that the settlement is fair and reasonable.

*Gittlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993) (quoting *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984)); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). When considering these factors, the court should keep in mind that a "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Consequently, there is a strong presumption in favor of finding a settlement to be fair. *Cotton*, 559 F.2d at 1331.

    **C.**    **The Court Should Approve the Settlement in this Case.**

        ***1.***    ***The Proposed Settlement Resulted from Fair and Honest Negotiations.***

---

[19]Burnley v. Short, 730 F2d 136 (CA4 1984).

The proposed settlement was fairly and honestly negotiated at arm's length with the active participation of experienced counsel, representative of Big V was by Verla Barrett and designated representatives of both parties including Kelly Utsinger of the Underwood Law Firm. The Court may presume that a proposed settlement agreement is fair and reasonable when it is the result of arm's length negotiations.  4 Alba Conte and Herbert Newberg, *Newberg on Class Actions* § 11:41 (4th ed. 2002).

Further, the fairness of the negotiating process is to be examined "in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983).  In this case, the parties conducted their arms-length settlement negotiations at a Court ordered judicial settlement conference before Tad Fowler whose experience, ability, fairness and integrity are beyond question.  In *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273 (D. Colo.1997), the district court found that the proposed consent decree was fairly and honestly negotiated where "[t]he completeness and intensity of the mediation process, coupled with the quality and reputations of the Mediators, demonstrate a commitment by the Parties to a reasoned process for conflict resolution that took into account the strengths and weaknesses of their respective cases and the inherent vagaries of litigation." *Id.* at 285.

Finally, the negotiations that resulted in this proposed settlement occurred after extensive discovery and pre-trial briefing took place over a period of a year and a half between counsel experienced in this type of litigation.  The facts were extensively and intensively discovered, including discovery to non-parties.  Voluminous discovery requests were propounded, and over five hundred pages of documents were analyzed by Plaintiffs' and Defendant's counsel.  This

extensive pre-trial discovery enabled the parties to fully evaluate the strengths and weaknesses of

the claims and defenses before entering into the proposed settlement. *Johnson v. City of Tulsa*,

2003 WL 24015151 at *7-8 (N.D. Okla. May 12, 2003) (finding settlement agreement was

produce of fair and honest negotiations where the negotiations occurred between experienced

counsel, under the auspices of U.S. District Judge Claire V. Eagan, after years of extensive pre-

trial discovery ) [Ex. 5].  With the exception of one opt-in who attended the mediation all others

in attendance agreed the settlement was fair and reasonable.

### 2.    *Serious Questions of Law and Fact Cast Doubt on the Ultimate Outcome.*

As the Court knows after considering the parties' summary judgment briefs, there are

serious questions of law and fact that make the ultimate outcome of this action uncertain.

*Gittlieb*, 11 F.3d at 1015 (finding that while courts have an "independent duty" to analyze the

evidence, "[i]ndependent analysis does not mean . . .that the district court must conduct a foray

into the wilderness in search of evidence that might undermine the conclusion that the settlement

is fair.").  Plaintiffs contend the Defendant's, decision to refuse to pay the overtime rate for hours

over 40 in one week and utilization of an hour bank to shift overtime hours to weeks in which

lesser hours were worked is a pattern, practice and policy of the Defendants, which Plaintiffs

claims was incorrect.  The Defendant, on the other hand, insists her action was based on advice

from the Texas Workforce Commission who she claims told her overtime was a "benefit" and

therefore optional.  The Defendant established that there are questions of fact precluding

summary judgment.  Thus, the ultimate liability determination in this action is not certain, and

would undoubtedly entail a lengthy and uncertain appellate process.  Further, the amount of

17

recoverable damages is also uncertain and would result in contested trial that would likely result in appeals from both sides.

### 3.    The Value of an Immediate Recovery Outweighs the Possibility of Future Relief After Protracted and Expensive Litigation.

In weighing the third *Gittlieb* factor, the Court should weigh the "value" of settlement against the additional risk and costs associated with continued litigation. 11 F.3d at 1015 ("Under the third . ... factor, that value is to be weighed not against the net worth of the defendant (which is doubtful in this case), but against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation."). In this case, the value of the settlement for the Plaintiffs includes the curtailment of costs in further prosecuting this action and additional delay. *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 87, 101 S. Ct. 993, 67 L. Ed. 2d 59 (1981) ("Settlement agreements may thus be predicated on an express or implied condition that the parties would, by their agreement, be able to avoid the costs and uncertainties of litigation."). A trial of this action on liability would have been lengthy, complex and undoubtedly expensive. The Plaintiffs projected putting on 9 live witnesses, the Defendants at least 3 witnesses, and the parties anticipated using as many as 30 exhibits at trial. With 13 Plaintiffs, and issues of each Plaintiff's duties and responsibilities as it relates to the classification issue, of mitigation, lost benefits, and the like, the trial was likely to be lengthy and expensive. An appeal was virtually certain. Thus a major element of the "value" of the settlement to the Plaintiffs is the fact that expenses and attorneys fees will no longer be incurred.[20] As noted by the United States District Court for the Southern District of Georgia in

---

[20]The contingent fee contract between Plaintiffs' counsel and the Named Plaintiffs provides for a step-up in the attorney fee to 50% in the event a notice of appeal is filed. Although there have been three

18

its order approving the Consent Decree in *EEOC v. Gulfstream Aerospace Corporation*, No.

402CV243 (S.D. Ga. May 12, 2003):

> As Gulfstream emphasizes, 'class action employment discrimination lawsuits
> have a well-deserved reputation for being complex.' *Cotton*, 559 F.2d at 1331.
> And, '[t]he track record for large class action employment discrimination cases
> demonstrates that many years may be consumed by trial(s) and appeal(s) before
> the dust finally settles.' *Officers for Justice v. Civil Service Comm'n of City and
> County of San Francisco*, 688 F.2d 615, 629 (9th Cir. 1982).

[Ex. 6 at p. 7].

Second, the value of settlement for the Plaintiffs also includes an expeditious resolution

of this matter as opposed to the likelihood of further delays in obtaining relief.  To date, the

Plaintiffs have received no relief whatsoever.  A number of the Plaintiffs, including several

Named Plaintiffs, no longer work for Big V and have moved out of the area.  Thus, obtaining

some, but not all, of the relief requested through settlement at this juncture outweighs the

"highest hopes" of more monetary relief in the future.  *See, e.g., In re Safety components, Inc.*,

166 F. Supp. 2d 72, 92 (D. N.J. 2001) ("[S]ettlement represents a compromise in which the

highest hopes for recover are yielded in exchange for certainty and resolution. . . .").  The value

of the certainty of this settlement to the Plaintiff class is considerable and weighs in favor of

Court approval; not to mention the fact that the accrual of additional fees through a trial and

possible appeal may adversely affect the ability of a small company to respond in damages.

### 4    *The Parties Believe the Settlement is Fair and Reasonable.*

The fourth *Gottlieb* factor for the Court to evaluate in considering the proposed

settlement is whether the parties believe the proposed settlement is fair and reasonable. *Gottlieb*,

---

interlocutory appeals in this case Plaintiffs' counsel is not seeking the stepped up percentage of 50%.

11 F.3d at 1014. Counsel for the parties and the representatives of the parties so believe. The mere fact that some class members may object to the proposed settlement does not prevent the Court from approving it. 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1797.1 (2d ed. 1986). The declaration by both Plaintiffs' and Defendant's counsel that the settlement is fair and reasonable is significant. Both sets of counsel are well recognized in the legal community and experienced in federal litigation involving FLSA wage and hour litigation. It is appropriate for the Court to consider that the parties' counsel are fully capable of evaluating the risks involved in this case and reaching a fair and reasonable valuation for compromise. *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) (finding that the court should "defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."); *Lopez v. City of Santa Fe*, 206 F.R.D. 295, 292 (D.N.M. 2002) ("[The] trial court is entitled to rely upon the judgment of experienced counsel for the parties. . . . Indeed, the trial court's judgment, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." (Citation omitted)). Furthermore, Darrell Thacker, a lead Plaintiff, who participated in the mediation executed the settlement agreement at mediation indicating his support of the settlement along with Heidi and Jake Maupin and Tina Ortiz.

## D.    The Court Should Approve the Requested Attorneys Fees

The settlement agreement between Defendant and Plaintiffs, if approved, will result in the creation of a common fund of $30,000.00. As a result of creating the common fund for Plaintiffs' benefit, Plaintiffs' counsel invoke the common fund doctrine to seek an attorneys' fee of 40% of the fund which is less than their time expended on the case. The common fund

doctrine is an equitable principle universally recognized and applied by United States Courts.

*See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980). The common fund doctrine also has been part of Texas jurisprudence for decades.

United States Courts have frequently recognized the percentage of fund approach as the appropriate method of awarding fees in common fund cases. *See Camden 1 Condo. Assoc., Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). The courts have recognized that the percentage of fund approach creates the right incentives in the litigation and rewards efficiency rather than mere hours billed.

> The rationale behind awarding a percentage of the fund to counsel is common fund cases is the same as that which justifies permitting contingency fee arrangements in general. . .The underlying premise is the existence of risk - the contingent risk of nonpayment. Thus, for a contingent fee to be appropriate, there must be a realistic risk of nonrecovery. . . The size of the contingent fee is designed to be greater than the reasonable value of the services in the individual case, i.e., hours worked times hourly rate. The higher payment due under a contingency fee reflects the fact that the lawyer will realize no return for his investment of time and office expenses in cases he loses.

*In re Combustion, Inc.*, 968 F. Supp. 1116, 1162-33 (W.D. La. 1997) (citations omitted).

In the Tenth Circuit, either the percentage of fund method or the lodestar method is acceptable, but the Tenth Circuit has expressed a preference for the percentage of fund method.

> In our circuit, . . . either method [lodestar or percentage of fund] is permissible in common fund cases; *however, Uselton implies a preference for the percentage of the fund method.* In all cases, whichever method is used, the court must consider the twelve *Johnson* factors.

*Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (footnote omitted, emphasis added) (citing *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849 (10th Cir. 1993). In *Gottlieb*,

the special master used the percentage of fund approach, considering the *Johnson* factors, to

calculate a reasonable attorney fee of $9,900,000.00. The special master noted that the lodestar

amount was $2,959,250.00 *Id.* at 484. Thus, the special master's use of the percentage of the

fund method resulted in an effective multiplier of 3.3 over the lodestar amount. The district court

rejected the special master's selection of the percentage of the fund and award plaintiffs' counsel

a lower fee based upon a multiplier of 2.6 over the lodestar. The Tenth Circuit reversed:

> We therefore hold that the fee awarded in this case should be calculated using the
> percentage fee method, and that the district court abused its discretion in rejecting
> the special master's selection of that method and replacing it with the lodestar
> plus multiplier method.

*Id.* at 487. In the instant case, the percentage of the fund method results in an attorney fee award

that is less than the lodestar multiplier in the *Gottlieb* case.

The Third Circuit has "now made it clear that district courts should apply the [percentage]

method of calculating fees in common fund cases . . . ." *In re Ikon Office Solutions, Inc.*, 194

F.R.D. 166, 193 (E.D. Pa. 2000) (citation omitted):

> Under the lodestar, the court determines fees by multiplying the number of hours
> spend on the litigation by an appropriate hourly rate. This method is most
> commonly used in statutory fee-shifting schemes to reward the attorneys for
> engaging in socially useful litigation. It is also applied when the type of recovery
> does not allow easy calculation of the settlement's value. The lodestar has come
> under attack recently, however. It may encourage attorneys to delay settlement or
> other resolution to maximize legal fees, and it places a great deal of pressure on
> the judicial system, as the courts must evaluate the proprietary of thousands of
> billable hours. The lodestar may also compensate attorneys insufficiently for the
> risk of undertaking complex or novel cases on a contingency basis.

*Id.* at 193 (citations omitted).[21]

---

[21]In *In re Rite Aid Corporation Sec. Litig.*, 2005 WL 697461, *2 (E.D. Pa. March 24, 2005)
United States District Judge Stewart Dalzell of the Eastern District of Pennsylvania recently awarded
$31,000,000 in attorney fees where the lodestar was 4.5 million (i.e., a multiplier of 6.96) [Ex. 7].

E.     **Analysis of *Johnson* Factors.**

In *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) the Tenth Circuit set out the twelve

*Johnson* factors to be considered by district courts in awarding attorney fees. *Id*. at 482, fn.4.

These twelve factors are separately discussed as they apply to the circumstances in the instant

case:

1.     <u>Time and Labor Required</u>.  Plaintiffs' counsel Philip R. Russ has devoted over

110.9 hours of work for approximately 1 ½ years in the creation of the common fund, this does

not count Marl Laney's time and that of their respective paralegals who have devoted additional

time to the case  resulting in a lodestar sum of at least $33,270.00 as of June, 14th, 2010. [Ex. 3.]

The requested fee would be the equivalent of a lodestar multiplier of less than 1.0.  While most

of the work was done by Philip R. Russ and Mark Laney of Plaintiffs' counsel, two legal

assistants, Darla Reese and Monica Peña, have contributed to the Plaintiffs' litigation of this

case.  All lawyers and support staff have been engaged almost exclusively in this litigation and

have been in regular, if not constant, communication with Plaintiffs.  Indeed, Plaintiffs' counsels'

efforts began before this action was filed and involved significant early analysis of Plaintiffs'

potential claims.  Unlike a typical wage and hour case, this overtime case and the time bank

policy involved difficult questions of law and fact that required intensive time and labor, and a

high degree of skill on the part of Plaintiffs' counsel.  Further, this was not a typical class action,

with a few named plaintiffs and an amorphous, absent class that required little management.

Counsel assisted *all* of the Plaintiffs in active participation at all stages of this litigation plus

related threats of criminal prosecution that were responded to as well as the defense of

counterclaims filed by Big V.  Further, the time commitments of Plaintiffs' and Defendant's

23

time has been incurred since July 14, 2010, and more time will be required to monitor the administration and distribution of the Settlement Fund.

2.    The Novelty and Difficulty of the Question. FLSA Wage and Hour cases are not novel but they are assuredly difficult. As the Court noted in *EEOC v. Gulfstream Aerospace Corp.*, No. 402CV243 (S.D. Ga. May 12, 2003):

> It is well-documented that '[i]n general, plaintiffs fact an uphill battle in prevailing on employment discrimination cases in federal court.' *Ingram*, 200 F.R.D. at 689. The *Ingram* court noted that there 'Class Counsel submitted a[n academic] report . . . analyzing data on federal employment discrimination cases, and the report concluded that employment discrimination plaintiffs are much less likely than other types of plaintiffs to win their cases at trial and sustain their victories on appeal.' *Id.* at 689 & n2.

Plaintiffs' counsel undertook extensive and sophisticated analysis of Defendants' proffered justification for paying straight time for hours over 40 in one week and utilizing a time bank to shift hours in calculating pay to each Plaintiff demonstrates material fact issues for a determination by the jury that they are entitled to overtime pay for work over 40 hours in one week. Defendant also injected counterclaims against the Plaintiffs that Plaintiff;s counsel had to defend, complicating the case further.

3.    The Skill Requisite to Perform the Legal Services Properly. The representation of 2 Named Plaintiffs and 11 opt-in Plaintiffs with different capabilities, coupled with the substantive and procedural legal issues involved, places this case in the category of complex litigation. Plaintiffs' counsel collectively have over seventy (70) plus years of experience in commercial litigation and have prosecuted numerous class actions and complex cases.

4.    The Preclusion of Other Employment. Plaintiffs' counsel are engaged in the ongoing practice of law. Had Plaintiffs' counsel not committed their resources to this action,

counsel could have accepted other matters. The prosecution of this litigation has reduced

Plaintiffs' counsel opportunity for employment in other matters, but not to a significant extent.

5.      The Customary Fee. The customary fee factor was discussed in detail above.

6.      Whether the Fee is Fixed or Contingent. Plaintiffs' counsel were very reluctant to

undertake this litigation because it was clear that any compensation would be contingent on a

favorable outcome. As noted above, favorable outcomes are not common in every FLSA wage

and hour case, and much less so in cases in which the defendant asserts multiple counterclaims, a

fact well known to Plaintiffs' counsel. It was also well known to Plaintiffs' counsel that

financing the litigation would by necessity fall squarely on them. It was also well known that

these out-of-pocket expenses would be substantial, with the risk that these expenses might never

be recoverable. The fact that Plaintiffs' counsel have advanced out-of-pocket litigation expenses

of over four thousand eight hundred dollars in prosecution of this action without any

reimbursement from the Plaintiffs speaks for itself.

With this knowledge in mind, Plaintiffs' counsel ultimately agreed to undertake the

engagement, but only after very clearly explaining to the Plaintiffs that counsel would require a

contingent fee of 40% to justify the substantial risk of recovering nothing for their efforts, and

the substantial risk of losing a large sum of invested expenses with a step-up to 50% in the event

of an appeal.

7.      Time Limitations Imposed by Client or Circumstances. This factor is not relevant

in this case.

8.      The Amount Involved and the Results Obtained. Plaintiffs' counsel have

achieved a favorable result for the Plaintiffs in this settlement. The amount involved is not

25

insubstantial given the facts of this case. Without the diligent, skilled and vigorous work of Plaintiffs' counsel and Plaintiffs' counsel advancing the costs of the litigation, the Plaintiffs would have received nothing.

9.      Experience, Reputation and Ability of Counsel. Plaintiffs' counsels' qualifications, skills, experience, ability and reputation were addressed above and known to the Court.

10.     The Undesirability of the Case. Compared to most contingent-fee litigation attracting counsel to represent plaintiffs, this action clearly fits the "undesirable" test. Few law firms would be willing to invest the time and expenses necessary to prosecute this litigation. FLSA wage and overtime litigation on behalf of a group of plaintiffs requires constant monitoring and attention. It also requires large expenditures for depositions and consultants. Virtually all of the information is in the hands of the Defendant, making the Plaintiffs' case that much more difficult to prove and requires an inordinate amount of time for Plaintiffs' counsel to analyze voluminous documents once produced by the Defendant, particularly when counterclaims are filed against the plaintiffs.

11.     Nature and Length of the Professional Relationship With the Client. This factor is not relevant in this case.

12.     Awards in Similar Cases. The awards in similar cases factor was discussed detail above. The Oklahoma Supreme Court's decision in *Oliver's Sports, Inc. v. National Standard Ins. Co.*, 615 P.2d 291 (Okla. 1980) instructs that counsel fees cannot be fairly awarded on the basis of time alone. Other factors, and in particular the litigation risk factor, must be considered.

Fees cannot fairly be awarded on the basis of time alone. The use of time as the

26

sole criterion is of dubious value economy of time could cease to be a virtue; and inexperience, inefficiency, and incompetence may be rewarded to the detriment of expeditious disposition of litigation. The litigation risk factor must be considered.

*Id.* at 294 (Footnote omitted.)

### F.   Litigation Expenses.

Plaintiffs' counsel seek reimbursement of litigation expenses incurred in the prosecution of this case on behalf of the Plaintiffs, in the sum of $4,809.86. *See* Affidavit of Philip R. Russ. [Ex. 3.]

## CONCLUSION

It is respectfully submitted that the settlement of this large, FLSA lawsuit is in the best interest of the parties and serves the ends of justice. The outcome of this action, if litigation should continue, would be uncertain. What *is* certain is that years of time, effort and expense would be consumed before final resolution of this action. The Plaintiffs should have (and many of them very much need) the benefit of the settlement proceeds now, as opposed to the uncertain prospect of something more in years to come.

Plaintiffs' counsel have carefully considered various alternatives for providing an equitable distribution of the settlement proceeds, and strongly believe the one proposed herein best accords with fairness to all.

Finally, Plaintiffs' counsel have rendered zealous, faithful and skillful services. Plaintiffs' counsel undertook this representation at great risk to their own interests, to secure justice for the Plaintiffs. The percentage of fund method is the established method for awarding attorney fees in both federal and Texas common fund cases. It is favored by courts because it provides self-regulating incentives for efficiency. It compensates counsel on the real value of the

services provided (the amount of benefit conferred).

An attorney fee award of 40% of the common fund is a fair and reasonable amount of compensation to Plaintiffs' counsel for establishing and bring into Court the common fund. Further, Plaintiffs' counsel request an award for litigation expenses that were expended for the benefit of the Plaintiffs and in furtherance of the creation and distribution of the common fund.

Respectfully submitted,

Mark W. Laney, SBN 11892500
LANEY & MYATT LAW FIRM
600 Ash Street
Plainview, TX 79072-8093
806-293-2618 - Telephone
806-293-8802 - Facsimile

and

LAW OFFICES OF PHILIP R. RUSS
2700 S. Western, Suite 1200
Amarillo, Texas 79109
(806) 358-9293 - Telephone
(806) 358-9296 - Facsimile

BY: /s/ Philip R. Russ
Philip R. Russ, SBN: 17406000

*Attorneys for Plaintiffs*

Kelly Utsinger, Esq.
UNDERWOOD WILSON BERRY STEIN & JOHNSON
P.O. Box 9158
Amarillo, Texas 79105-9158

and

Ann Manning, Esq.
UNDERWOOD WILSON BERRY STEIN & JOHNSON
1111 West Loop 289
Lubbock, Texas 79416-5029


BY: /s/ Kelly Utsinger
Kelly Utsinger, SBN: 20416500

**Attorneys for Defendant**


## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of July, 2010, I electronically filed the foregoing "Plaintiffs' and Defendant's Motions for Court Approval of Collective Action Settlement, Settlement Distribution and Plaintiffs' Unopposed Motion for Approval of Plaintiffs' Attorneys Fees and Litigation Expenses, and Brief in Support" with the Clerk of the Court for the Northern District of Texas, by using the CM/ECF system which will send a notice of electronic filing to the following CM/ECF participants:

Kelly Utsinger, Esq.
UNDERWOOD WILSON BERRY
STEIN & JOHNSON
500 S. Taylor Suite 1200
P.O. Box 9158
Amarillo, Texas 79105-9158

Ann Manning, Esq.
UNDERWOOD WILSON BERRY
STEIN & JOHNSON
1111 West Loop 289
Lubbock, Texas 79416-5029


/s/ Philip R. Russ
Philip R. Russ

29

# Exhibit 1
# (Notice of Proposed Collective)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT
# AMARILLO DIVISION

| | | |
|---|---|---|
| Cassie Pointer and<br>Darrell Thacker, individuals | § <br> § <br> § | |
| Plaintiffs, | § <br> § | |
| vs. | § <br> § | CASE NO. 2:09-CV-83-J |
| Verla Varnell Barrett, individually<br>and d/b/a Big V Construction, | § <br> § <br> § | |
| Defendant. | § <br> § | JURY TRIAL DEMANDED |

## NOTICE OF FAIR LABOR STANDARDS ACT LAWSUIT

TO:   ALL PRESENT OR FORMER HOURLY EMPLOYEES WHO WERE OR ARE HOURLY EMPLOYEES IN THE EMPLOYMENT OF BIG V CONSTRUCTION WHO HAVE WORKED AT ITS FACILITY IN QUITAQUE, TEXAS, OR ITS OTHER FACILITIES, AT ANY TIME AFTER APRIL 1, 2006.

## 1.    REASON FOR NOTICE

The purpose of this Notice is to inform you of the existence of a group lawsuit in which you may be a member, to advise you of how your rights may be affected by this suit, and to instruct you on the procedure for participating in this suit if you so desire.

## 2.    DESCRIPTION OF THE LAWSUIT

On April 1, 2009, Cassie Pointer and Darrell Thacker ("Plaintiffs") filed this lawsuit against Verla Varnell Barrett, individually and d/b/a Big V. Construction ("Defendant"), alleging that Defendant failed to pay her employees all of the wages required by the overtime provisions of the federal Fair Labor Standards Act. Specifically, Plaintiff alleges that Defendants failed to pay proper overtime pay by paying overtime as regular time, not time and a half as required by

the FLSA. Defendant does oppose this lawsuit as to such liability, and the Court has issued an order as to the liability of Defendant Verla Varnell Barrett, individually and d/b/a Big V. Construction on certain liability issues in the lawsuit.   Plaintiffs seek back wages for the improperly paid overtime. Although the Court has authorized the issuance of this notice, the Court has made no determination about the amount of damages the Defendants owe.

### 3.    PERSONS WHO HAVE A RIGHT TO PARTICIPATE IN THIS LAWSUIT

Plaintiffs have filed this action on behalf of all present and past hourly employees who worked during the time period from the 1st day of April, 2006, to the date of this Notice, or presently work as hourly employees, who were employed by Verla Varnell Barrett, individually and d/b/a Big V. Construction and who worked in the Quitaque, Texas facility, or any other facility owned by Verla Varnell Barrett, individually and d/b/a Big V. Construction in the United States. If you are one of these people, you have a right to join this suit.

This Notice is only for the purpose of determining the identity of those persons who wish to be involved in this case and has no other purpose.

### 4.    HOW TO JOIN THE SUIT

If you fit the description above, that is, you were or are an hourly employee of Verla Varnell Barrett, individually and d/b/a Big V. Construction from the 1st day of April, 2006, to the date of this Notice, and you want to join in this suit you must send the enclosed Consent To Join form to the lawyers representing the Plaintiff workers:

LAW OFFICES OF PHILIP R. RUSS
2700 S. Western, Suite 1200
Amarillo, Texas 79109
806-358-9293 - Telephone
806-358-9296 - Facsimile

or

Mark W. Laney, SBN 11892500
LANEY & MYATT LAW FIRM
600 Ash Street
Plainview, TX 79072-8093
806-293-2618 - Telephone
806-293-8802 - Facsimile

Your Consent To Join Form must be received at one of the above addresses no later than the _____, 2009. After that date no Consent to Join form will be accepted. If you do not want to join in this lawsuit, you do not need to do anything. You will only be included if you send in the Consent To Join form.

## 5.     EFFECT OF JOINING THE SUIT

**IF YOU JOIN THE LAWSUIT** you will be bound by the Court's judgment, win or lose. The Court has decided that the law required Verla Varnell Barrett, individually and d/b/a Big V Construction to pay for certain disputed time and that decision will apply to all workers who join in the suit who have not been adequately paid for such time. If you are a suitable member of the class as a worker who was not adequately paid for such time, you will be bound by and you may be eligible to share in any back wage award or settlement on behalf of the class.

App. 11

By joining this lawsuit, you designate the named Plaintiffs as your agents to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering into an agreement with Plaintiffs' counsel concerning fees and costs, and all other matters pertaining to this lawsuit. These decisions and agreements made and entered into by the representative Plaintiffs will be binding on you if you join in this lawsuit.

6.    **EFFECT OF NOT JOINING THE SUIT**

**IF YOU DO *NOT* JOIN IN THE LAWSUIT** you will *not* be bound by the Court's decision and you will *not* be entitled to share in any back wage award or settlement recovered by the class in this lawsuit if the Court rules for the workers as to damages or unpaid wages owed. In addition, if you do not join in this lawsuit or file a lawsuit of your own, the time limit for acting on any wage claims you may have will continue to run and may cause your claim to be barred.

7.    **YOUR LEGAL REPRESENTATIVE IF YOU JOIN THIS SUIT**

Plaintiffs are represented by the Law Offices of Philip R. Russ, a law firm in Amarillo, Texas, and the Laney & Myatt Law Firm, a law firm in Plainview, Texas. If you want to join in this lawsuit, these lawyers will represent you. You will not have to pay these lawyers for their services unless the Court awards you money. If that happens, the Court may deduct a reasonable amount from your award to pay the lawyers for their services representing the workers. If you would prefer to hire a different lawyer to represent you, you have the right to do so, but you do not have to.

App. 12

8.   **NO RETALIATION**

It is against the law for anyone to punish you for being a part of this lawsuit.

9.   **FURTHER INFORMATION**

If you have any questions about this notice you may write to the Plaintiffs' attorney Philip R. Russ, 2700 S. Western Street, Suite 1200, Amarillo, Texas 79109, and you may call him at 806-358-9293; or Mark W. Laney, 600 Ash Street, Plainview, Texas 79072-8093, and you may call him at 806-293-2618.

SIGNED THIS _____ DAY OF _____, 2009.

Respectfully submitted,

Mark W. Laney, SBN 11892500
LANEY & MYATT LAW FIRM
600 Ash Street
Plainview, TX 79072-8093
806-293-2618 - Telephone
806-293-8802 - Facsimile
    and
LAW OFFICES OF PHILIP R. RUSS
2700 S. Western, Suite 1200
Amarillo, Texas 79109
(806) 358-9293 - Telephone
(806) 358-9296 - Facsimile


By:_____
       Philip R. Russ, SBN 17406000

Attorneys for Plaintiffs

App. 13

# Exhibit 2
# (Proposed Distribution to Clients)
# (Filed under Seal)

THIS EXHIBIT IS BEING FILED UNDER SEAL

# Exhibit 3
# (Affidavit of Philip R. Russ)
# (Order Directing Counsel to)
# (Issue Notice of Hearing)
# (Sample Contract w/ Clients)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT
AMARILLO DIVISION

| | | |
|---|---|---|
| Cassie Pointer and | § | |
| Darrell Thacker, individuals | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CASE NO. 2:09-CV-83-J |
| | § | |
| Verla Varnell Barrett, individually | § | |
| and d/b/a Big V Construction | § | |
| | § | |
| Defendant. | § | JURY TRIAL DEMANDED |

### AFFIDAVIT OF PHILIP R. RUSS

STATE OF TEXAS          )
                                      )
COUNTY OF POTTER   )

Affiant, being first duly sworn, does depose and state as follows:

1.      I have personal knowledge of the facts set out herein.

2.      I am one of the counsel of record for Plaintiffs in the referenced matter and have practiced law in the states of Texas and Oklahoma, in both State and Federal Court, since my admission to the bar in 1967 in Oklahoma and Texas in 1968.

3.      I have been involved with this lawsuit since its filing, and prior to the filing was involved in meetings with Plaintiffs and potential Plaintiffs in preparation for filing this lawsuit.

4.      Attached hereto as Exhibit "1" is an Employment Contract and Contingent Fee Agreement ("Agreement") entered into with Cassie Pointer, one of the Named Plaintiffs in this lawsuit. Plaintiffs' counsel have an identical signed Agreement with the other Named Plaintiffs and with 5 of the opt-in Plaintiffs. Plaintiffs' counsel do not have signed agreements with the other opt-in Plaintiffs. There are 2 Named Plaintiffs and 11 opt-in Plaintiffs in the lawsuit at this

time.

5.      During the course of this representation, The Law Offices of Philip R. Russ ("Russ") and co-counsel, The Law Offices of Laney & Myatt, have performed the legal services which brought about the settlement offer which is presently before the Court.

6.      Russ has one lawyer who has had primary responsibility in this matter. In addition, Monica Pena and Darla Reese, legal assistants, have devoted all or substantially all of their time to this matter for 1 ½ years. This case involves hundreds of documents, including payroll records, trial exhibits, damage models/projections and the like. Russ' time records, which I have reviewed, show that the firm has incurred 110.9 hours by Philip R. Russ, without considering the numbers of hours by Mark Laney, Monica Pena or Darla Reese, for a total of $33,270.00 in time charges for Philip R. Russ alone from inception through the mediation date of June 14th, 2010. The range of hourly rates for the lawyers primarily involved in the case was and is $300.00. Monica Pena and Darla Reese's hourly rates are $75.00. I anticipate expending an addition 15 hours of my time handling three (3) mail-outs in the settlement approval, fairness and distribution process. There are a substantial number of hours not documented by Philip R. Russ, Mark Laney, Monica Pena and Darla Reese that are not claimed.

7.      The combined dollar value of the legal services of The Law Offices of Philip R. Russ alone through June 14, 2010, equals $33,270.00, plus expenses of $4,809.86 for a grand total of $38,079.86, see Exhibit "1" to this affidavit being Philip R. Russ' itemization. The requested 40% contingent fee sought in this case is only $12,000.00.

8.      In addition, The Law Offices of Philip R. Russ, see Russ' itemization of expenses as Exhibit "2" hereto, and The Law Offices of Laney & Myatt (Mark Laney advanced $2,719.80) of which a portion was to reimburse the Law Offices of Philip R. Russ by way of equalization

and both firms have incurred litigation expenses actually advanced a total of $4,809.86. Included within this total are prepaid expenses. These prepaid expenses are for mailing expenditures which Plaintiffs' counsel will incur between now and the time that this matter is brought to a close. The first mailing will be to mail out copies of the Notice of Proposed Collective Action and Hearing. The second mailing will be to mail out copies of the Court's Order, if granted, approving the Collective Action Settlement. The third mailing will be a certified, return receipt requested mailing of the individual checks to the Plaintiffs. The total of the prepaid mailing expenses less than $100.00.

FURTHER AFFIANT SAITH NOT.

Philip R. Russ

SUBSCRIBED AND SWORN TO BEFORE ME, this the 30th day of July, 2010

Notary Public, State of Texas

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT
AMARILLO DIVISION

| | | |
|---|---|---|
| Cassie Pointer and | § | |
| Darrell Thacker, individuals | § | |
| | § | |
|     Plaintiffs, | § | |
| | § | |
| vs. | § | CASE NO. 2:09-CV-83-J |
| | § | |
| Verla Varnell Barrett, individually | § | |
| and d/b/a Big V Construction | § | |
| | § | |
|     Defendant. | § | JURY TRIAL DEMANDED |

## ORDER

Upon Motion of Plaintiffs and their counsel [Docket No. ____], and notification to the

Court of a proposed settlement of this action, and for good cause shown, the Court orders

Plaintiffs' counsel to issue immediately the attached Notice of Proposed Collective Action

Settlement and Hearing, and a copy of the proposed settlement distribution schedule, to each of

the Plaintiffs herein by first class United States mail.

IT IS SO ORDERED this _____ day of August, 2010.


_____
MARY LOU ROBINSON
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT
AMARILLO DIVISION

| | | |
|---|---|---|
| Cassie Pointer and | § | |
| Darrell Thacker, individuals | § | |
| | § | |
|     Plaintiffs, | § | |
| | § | |
| vs. | § | CASE NO. 2:09-CV-83-J |
| | § | |
| Verla Varnell Barrett, individually | § | |
| and d/b/a Big V Construction | § | |
| | § | |
|     Defendant. | § | JURY TRIAL DEMANDED |

## NOTICE OF PROPOSED COLLECTIVE
## ACTION SETTLEMENT AND HEARING

**TO:**   **ALL PLAINTIFFS IN THE ABOVE CAPTIONED LITIGATION**

This Notice is sent to you pursuant to the Order of the United States District Court for the Northern District of Texas in accordance with Rule 23 of the Federal Rules of Civil Procedure. The purpose of this Notice is to advise you:

1.    Of a proposed settlement of this collective action with Defendant Verla Varnell Barrett, d/b/a Big V Construction, in the amount of $30,000.00;

2.    Of a Motion for an award of attorneys fees and litigation expenses filed pursuant to FED. R. CIV. P. 54(d)(2); and

3.    Of a hearing, at which the Court will consider whether to approve the proposed settlement and settlement distribution and motion for attorneys fees and litigation expenses, to be held at _____ o'clock a.m./p.m. on _____, 2010.

PLEASE READ THIS NOTICE CAREFULLY.

I.    SUMMARY OF THE SETTLEMENT AND DISTRIBUTION

A.    <u>The Settlement Agreement.</u>  The Defendant, Verla Varnell Barrett, d/b/a Big V Construction, has agreed to pay $30,000.00 in exchange for a dismissal of this lawsuit with prejudice.

B.    <u>The Payment by Defendants.</u>  The settlement amount shall be paid upon the Court's approval of the settlement.

C.   The Distribution to Plaintiffs.  Subject to Court approval, after deduction of litigation expenses and attorney fees, the net proceeds of the settlement shall be distributed to each of the Plaintiffs according to the schedule attached to this Notice, which is calculated as follows:

(1)   The settlement distribution schedule is calculated to resemble a potential damage award to Plaintiffs.  The settlement distribution schedule is calculated based upon subtraction of an attorney fee award and $4,809.86 litigation expenses.

(2)   Each Plaintiff's estimated wage loss is calculated by multiplying the amount of their weekly wage by the amount of time they worked at the call center times the straight time rate and divided into the net fund for distribution to determine each Plaintiff's pro rata portion to June 14, 2010. The estimated wage loss for each individual Plaintiff is then divided by the total amount of wage loss for all Plaintiffs.  The resulting percentage assigned to each Plaintiff is then multiplied by the amount of net settlement proceeds available for distribution to arrive at each Plaintiff's individual portion of the net settlement fund.  The settlement funds after deduction of attorneys fees and costs are distributed equitably to all Plaintiff's based upon the amount of each Plaintiff's weekly wage at the time of discharge or settlement of this case.

D.   Dismissal and Constructive Relief.  In the event the Court enters final judicial approval of the proposed settlement and settlement distribution, this action shall be dismissed with prejudice as to the claims and demands of all parties.  Each Plaintiff shall be deemed to have constructively released all claims against Defendant arising out of their employment at the Big V Construction in and around Quitaque, Texas, as if he or she had individually executed a release of such claims.

E.   No Effect on Retirement or Workers Compensation.  The dismissal of this lawsuit with prejudice and the constructive release of all claims shall not affect any Plaintiffs' current legal rights with respect to their pensions, 401(k)'s, workers compensation claims or benefits, or current insurance arrangements.

F.   Counsel for Plaintiffs recommends Court approval of the proposed settlement and settlement distribution as fair and reasonable and in the best interests of the Plaintiffs in view of (a) the complexities of the case; (b) the serious questions of law and fact that exist which place the ultimate outcome of this litigation in doubt; © the prospects of appeal of any judgment to the trial court; (d) the lengthy delays that any such appeals would entail; and (e) the substantial benefits that Plaintiffs will realize under the terms of the proposed settlement.

## II.   **HEARING**

A.   A hearing will be held by the Court in the Courtroom on the second floor of the United States Courthouse, 205 E. Fifth Street, Amarillo, Texas, at _____ o'clock a.m./p.m. on _____, 2010.

B.   The purpose of this hearing is to determine whether the proposed settlement and settlement distribution is fair and reasonable and should be approved by the Court.

C.   Any Plaintiff who wants to state his or her opposition to the proposed settlement and/or settlement distribution must file a Notice of Opposition to Proposed Settlement on or before _____, together with a statement that explains the basis of his or her opposition.

    (1)   The Notice of Opposition must be filed with the Clerk of the United States District Court for the Northern District of Texas, 205 E. Fifth St., Room 133, Box 13240, Amarillo, Texas 79101-1559; and

    (2)   The Notice of Opposition also must be served upon counsel for Plaintiffs and counsel for Defendants in person or by first-class mail:

| **ATTORNEYS FOR PLAINTIFFS** | **ATTORNEYS FOR DEFENDANT** |
|---|---|
| Philip R. Russ, Esq. | Kelly Utsinger, Esq. |
| LAW OFFICES OF PHILIP R. RUSS | UNDERWOOD WILSON BERRY STEIN & JOHNSON |
| 2700 S. Western, Suite 1200 | P.O. Box 9158 |
| Amarillo, Texas 79109 | Amarillo, Texas 79105-9158 |
| | |
| Mark W. Laney, SBN 11892500 | Ann Manning, Esq. |
| LANEY & MYATT LAW FIRM | UNDERWOOD WILSON BERRY STEIN & JOHNSON |
| 600 Ash Street | 1111 West Loop 289 |
| Plainview, TX 79072-8093 | Lubbock, Texas 79416-5029 |

D.   At the hearing, any Plaintiff who has filed and served a Notice of Opposition to Proposed Settlement may appear (in person or through counsel) and be heard, to the extent allowed by the Court.

E.   No Plaintiff will be heard in opposition to the proposed settlement or settlement distribution unless he or she has filed and served a Notice of Opposition to Proposed Settlement. Any Plaintiff who does not file and serve a written Notice of Opposition in the manner provided above shall be deemed to have waived any objection to the proposed settlement and settlement distribution.

    F.      No Plaintiff is required to appear at the hearing.

## III.    **CONCLUSION**

This Notice is not an expression of any opinion by the Court as to the merits of any of the claims or defenses asserted by any party in this litigation. The purpose of this Notice is to inform you of the proposed settlement, settlement distribution, motion for an award of attorneys fees and litigation expenses, and the hearing set for the Court to consider approving these matters.

This Notice is issued to you by Order of the Court.

# LANEY & MYATT
# LAW FIRM

600 ASH STREET
PLAINVIEW, TEXAS 79072-8093

(806) 293-2618     FAX (806) 293-8802

www.laneymyatt.com

**MARK W. LANEY, LAWYER**
mark@laneymyatt.com

BOARD CERTIFIED - TEXAS BOARD OF LEGAL SPECIALIZATION
PERSONAL INJURY TRIAL LAW, SINCE 1982
CIVIL TRIAL LAW, SINCE 1982
STATE BAR COLLEGE OF TEXAS
CHARTER MEMBER, SINCE 1981
FELLOW, SINCE 1995

**JODY L. MYATT, LAWYER**
jody@laneymyatt.com

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HALE | § |

## ATTORNEY RETAINER AGREEMENT-CONTINGENT FEE

CLIENT(S): _Cassie Pointer_

ON BEHALF OF: _____

1.      For services rendered and to be rendered in this matter by the offices of Laney & Myatt Law Firm, the undersigned on behalf of himself/herself and/or the above referenced client (whether one or more) retains this law firm to assert claims against: _Verla Barrett, Individually and d/b/a Big V Construction_ _____, any applicable insurance coverage, and whomever (including corporations or government bodies) is probably liable for all damages (actual, consequential, special and/or punitive) and injuries or other damages resulting from the incident of _____ _employment issues_ , which occurred on or about the _____ day of _____, 20___, in _____ _Briscoe_ County, _Texas_ hereafter referred to as the "claim".

2.      Attorneys, their agents and employees, are authorized to take all steps deemed by them to be necessary and appropriate to obtain a satisfactory result, including but not limited to securing a complete investigation, instituting legal proceedings, employing consultants, expert witnesses, and associate counsel, entering into settlement negotiations, preparing settlement brochures, preparing for and/or PROCEEDING TO TRIAL and/or DISCONTINUING LITIGATION.

        Attorneys agree not to settle or compromise the case without the client's approval of the terms and form of the settlement. The client agrees to cease all communications with all third parties regarding the subject matter of this claim and further agrees not to enter into any settlement negotiations or agreements regarding such claims or matters which could impact on such claims, without the knowledge and written consent of the attorneys. If such settlement does occur, however, the full attorneys' fees shall remain as set forth below.

INITIALS: _____

INITIALS: _____

October 2008

ATTORNEY RETAINER AGREEMENT-CONTINGENT FEE
PAGE 2 OF 6

3.      For the services rendered, the client agrees to pay the attorneys a fee which shall be CONTINGENT ON WHAT IS RECOVERED in this matter by way of settlement, judgment or otherwise, to be computed as follows:

      a.      40% of **all sums recovered**

      b.      50% of **all sums recovered** in the event a Notice of Appeal is filed by any party or jury selection begins for a second trial.

Provided, further, in the event of an appeal by any party, client understands and agrees that client will hire other appellate counsel (separate from attorneys), on an hourly basis, to handle or respond to any appeal of this case. Further, attorneys agree that all sums paid by client for appellate attorney fees to other counsel shall be taken as a credit and deducted from any contingent fees owed attorneys. If, instead, attorneys elect to handle the appeal, there will be no hourly fees, but the contingent fee shall be 50% of all sums recovered after an appeal bond is filed or an appeal is otherwise perfected.

**"All sums recovered"** includes everything recovered, (regardless of how it may be designated), including but not limited to, medical expenses and/or the value of all benefits received (for example, payment made directly to medical service providers for medical expenses). Personal Injury Protection (PIP) and Medical Payments (MEDPAY) benefits are not usually contested. While you may wish to file for these benefits on your own (in which case there is no fee), most clients want to turn everything over to us. If you want us to file the bills and information for lost wages and, if the insurance company does not dispute coverage for PIP/MEDPAY, then the above fees do not apply; however, there may be an administrative charge of up to 10% for our processing these bills and lost wage information for payment. If the insurance carrier denies coverage or payment and we have to take action so that PIP benefits will be paid, the attorneys' fees, as set forth in the above percentages, will apply.

IN ADDITION TO THE ABOVE FEES, client shall pay to attorneys, OUT OF THE CLIENT'S SHARE OF THE RECOVERY, all court costs, advances, and expenses advanced by the attorneys in connection with this matter. The attorneys are authorized to incur such expenses as they in their sole and exclusive judgment deem reasonable and necessary to accomplish a satisfactory resolution of the claim and are authorized to advance such expenses on behalf of client. Said expenses shall include, but not be limited to, a one time administrative cost charge of one hundred twenty-five dollars, expenses for court costs, court reporter services, investigation, travel and lodging, physician and/or expert witness fees, consultant fees, settlement and trial exhibits, illustrations, models, diagrams, photography, videoing, copies (at twenty-five cents per in house copy, five dollars for in house color copy), equipment expenses, video tape, long distance charges (at a flat rate of three dollars per call regardless of length), and fax expense (at a flat rate of six dollars per transmission sent regardless of length) and mileage of a minimum of fifty cents per mile, up to the same rate allowed by the Internal Revenue Service for business mileage. This rate may vary each year. All other expenses are billed in the exact amounts incurred and will be documented for Client's review at the closing of any recovery on the case. Client agrees that attorneys may borrow funds from a commercial bank to finance or pay such court costs and litigation expenses and the reasonable interest charged by the bank on such borrowed funds will be added to the court costs and litigation expenses to be deducted from the settlement or recovery. At the expiration of one year from the date of signing of this contract, if the case is not concluded, interest on the outstanding expenses not otherwise borrowed from a commercial bank, shall begin to accrue at the rate of 8% per annum to be paid to the attorneys, out of client's share of recovery. Client agrees and authorizes a reserve amount to be withheld out of the final disbursement of the recovery of not more than 15% of the net recovery due client, to pay any potential outstanding expenses that have been incurred but not yet been billed, with the balance of the reserve, after deducting any case expenses billed after disbursement, to be disbursed to the client within one hundred and twenty (120) days. When any costs or expenses are common to, and incurred on behalf of, more than one client, Client authorizes Attorneys to apportioned such common expenses among the common clients on the pro rata basis that each client's recovery bears to the total recovery of all common clients.

INITIALS:  _____

INITIALS:  _____

October 2008

In the event of multiple claimants, clients waive any conflict of interest and desire attorney to represent all claimants to this contract. Provided frouther, clients agree they will decide how to split settlement funds among them, and that attorney will not play any part in the decision of how that split will be made.

In the event a subrogation claim is made by any third party, we reserve the right to negotiate for and claim further attorneys' fees from such third party out of the monies otherwise payable to that third party. Subrogation is a claim by a third party for reimbursement of monies paid. For example, a hospitalization insurance carrier makes payment for medical bills incurred as a result of an automobile accident. The hospitalization carrier may have a right to request reimbursement from the party at fault or his insurance carrier. We reserve a similar right for additional fees in the event the client requests us to negotiate and obtain a reduction in medical expenses otherwise owed to the various medical service providers.

In the event the law changes requiring payment of sales tax or any other tax on recoveries or on attorneys' fees, the client shall pay such tax out of the client's share of the recovery.

If, at the final disposition of the case, nothing is recovered on behalf of the client, the client will not owe the attorneys a fee.

4.       At the final disposition of the case, the clients agree promptly to execute such settlement documents as are recommended by the attorney and properly and promptly to endorse any settlement drafts or checks, and the attorneys shall disburse to the client the client's share of the recovery after deducting their fee as described in paragraph 3, after deducting all expenses as defined in paragraph 3 and after deducting all debts incurred by the client remaining unpaid, including but not limited to, those as defined in paragraph 7.

5.       In the event that a structured settlement is negotiated, the client approves and authorizes the attorneys' fee to be based upon the PRESENT VALUE BENEFIT of the structured settlement to the client rather than upon the present market cost of such a settlement. (The PRESENT VALUE BENEFIT shall be determined by applying appropriate discount rates that consider the after tax benefits of the negotiated structure settlement to the plaintiff.) The client understands that the PRESENT VALUE BENEFIT of a structured settlement to the client might exceed the present market cost at which the defendant can purchase a structured settlement package. The attorney retains the sole right to take the attorneys' fee in cash at the time of settlement or in deferred payments, regardless of the manner in which the client's recovery is paid. Further, attorney may structure their fees in a qualified structure, even if Clients do not structure their recovery.

6.       THE CLIENT HEREBY GRANTS THE ATTORNEYS A LIEN ON THIS CAUSE OF ACTION, and a lien on any proceeds and any judgments recovered in connection with this cause of action as security for the payment of attorneys' fees and expenses as contracted for herein.

7.       Client acknowledges and agrees that, regardless of the outcome of this case, the attorneys do not assume liability for nor agree to pay from the attorneys' fee any debts incurred by the client including, but not limited to expenses incurred for medical care, nursing, special aids and transportation, as well as any medical insurance and/or workers' compensation subrogations and/or Medicare/Medicaid reimbursement and/or hospital liens arising as a result of the incident giving rise to the claim. Client acknowledges and understands that, to the extent any of the foregoing claims, debts, or expenses are not paid or assumed by the defendants as part of the terms of the final disposition of this case, these debts and expenses shall remain the client's sole responsibility. Client does grant to the attorneys the right and power to deduct from any settlement and pay over all expenses of a medical nature (e.g., physicians, hospitals, ambulances, prosthetics, etc.) direct to the provider, as well as to pay any expenses for which client has signed any authorization or assignment to the extent that funds are available after deduction of attorneys' fees from all sums recovered, which includes without limitation all recovery made for medical expenses.

INITIALS:    _____

INITIALS:    _____

October 2008

ATTORNEY RETAINER AGREEMENT-CONTINGENT FEE
PAGE 4 OF 6

8.      THE CLIENT AGREES THAT THE ATTORNEYS RETAIN THE RIGHT AT ANY TIME FOLLOWING INVESTIGATION, DISCOVERY, OR LEGAL RESEARCH, TO RELEASE THEMSELVES FROM THIS CONTRACT AND WITHDRAW FROM THE REPRESENTATION OF THE CLIENT, IF IT APPEARS TO THE ATTORNEYS THAT CIRCUMSTANCES HAVE DEVELOPED WHICH HINDER CONTINUED EFFECTIVE LITIGATION OF THE CASE; THAT CONTINUED LITIGATION WOULD NOT BE COST EFFECTIVE OR RESULT IN A SUSTAINABLE OR COLLECTABLE JUDGMENT; OR THE CLIENT ENGAGES IN CONDUCT WHICH RENDERS IT UNREASONABLY DIFFICULT FOR THE ATTORNEYS TO CARRY OUT THE EMPLOYMENT EFFECTIVELY. IN THE EVENT OF SUCH A WITHDRAWAL, THE ATTORNEYS WILL RETAIN A LIEN ON THE CASE TO THE EXTENT OF THE EXPENSES AND COSTS WHICH HAVE BEEN ADVANCED ON THE CLIENT'S BEHALF, TOGETHER WITH A FEE CALCULATED IN QUANTUM MERUIT. THE CLIENT AGREES TO PROTECT SUCH EXPENSES, COSTS AND FEES OUT OF ANY RECOVERY ULTIMATELY OBTAINED IN THE CASE. If client misrepresents facts to the attorneys that create a substantially different and less valuable case, the attorneys have the option of charging client on an hourly basis at not less than usual hourly charges for attorneys and assistants in current litigation in the office and to receive interest at the rate of twelve percent per annum on all expenses advanced for the client. If withdrawal is necessitated by the client's misconduct, the attorneys shall be entitled to the full contingent fee, as well as expenses and costs as set forth above. Any dispute arising between the Client and the Attorneys, if not resolved amicably, shall be resolved by mediation.

9.      All exhibits and trial models shall remain the work product of the attorneys and control thereof shall remain with the attorneys. The client authorizes the attorneys to retain and utilize exhibits, documents and materials developed in this case as teaching and demonstration aids in lectures and professional presentations and publications, subject to provisions being made to protect the client's privacy.

10.     The attorneys make no representations or guarantees regarding the tax consequences of any recovery obtained on behalf of the client and advises client to SEEK YOUR OWN TAX ADVICE FROM A QUALIFIED TAX ADVISOR.

11.     This contract is entered into in Hale County, Texas, which shall also be the place of performance and payment in accordance with the terms of the contract. Furthermore, this contract contains all the agreements of the parties, and may not be amended, except in writing and executed by all parties.

12.     If Client has been referred to Attorneys or Attorneys have been associated by another attorney not in the same firm as Attorneys, Client acknowledges that such referral or association was authorized by Client in advance, and, reaffirms Client's consent to the division of fees, as set forth in the Addendum to this Contract, which is acknowledged by Client initialing the same.

13.     Client hereby authorizes Attorney to refer or associate another attorney not in the same firm as Attorneys, if Attorney deems it to be in Client's best interest. If Attorneys refer Client to, or associate another attorney on Client's case, Client further authorizes a division of attorneys' fees between the other attorney and Attorneys, as set forth in the attached Addendum to this Contract and, by initialing such Addendum, Client acknowledges disclosure of the same and consents to Attorneys entering into such an arrangement.

14.     If Attorneys do not now contemplate such a referral or association, Client continues Client's authorization for Attorney to associate or refer to any other attorney not in the same firm, any time during the handling of Client's case, as Attorneys might deem advisable to be in Client's best interest, in which event Attorneys shall disclose same to and obtain Client's consent in advance of such referral or association.

15.     **In any event, if more than one attorney not in the same firm is involved with and/or working on Client's case, either by referral or association by or to Attorneys, the total attorneys' fees, for all attorneys, shall not increase and shall not exceed the amount contracted for above.**

INITIALS:

INITIALS:

October 2008

ATTORNEY RETAINER AGREEMENT-CONTINGENT FEE
· PAGE 5 OF 6

16.    The client acknowledges that the attorneys have made NO GUARANTEE regarding the successful resolution of said cause of action, and all expressions relative thereto are matters of attorneys' opinion only and shall not be considered as express or implied warranties of the claim's outcome.

17.    The client agrees to deposit the amount of $ ___—O—___ as a retainer to be placed in attorneys' trust account.  Said amount is to be used by attorney for out of pocket expenses incurred by Attorneys as described above.

18.    The client/clients acknowledge being advised of the right and opportunity to use some other form of fee arrangement (such as hourly, per diem, fixed, etc.), but wish to proceed on the "contingent fee" basis set forth above.

<Signature page to follow>

INITIALS:    _____

INITIALS:    _____

October 2008

ATTORNEY RETAINER AGREEMENT-CONTINGENT FEE
PAGE 6 OF 6

WE HAVE READ THE ABOVE AGREEMENT BEFORE SIGNING IT.

Signed this __26__ day of __MARCH__ 20__09__.

CLIENT: _____Cassie  POINTER_____

SIGNATURE: X _____Cassie  Pointer_____

S.S.#: __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__ BIRTHDATE: __May 15, 1980__ DRIVER'S LICENSE: __14526066__

CLIENT: _____

SIGNATURE: X _____

S.S.#:_____ BIRTHDATE:_____ DRIVER'S LICENSE: _____

ADDRESS: ___P.O. Box 293_____

_____Quitaque, Tx 79255_____

TELEPHONE: __806-422-0530__ (home)

__806 No. 423-1103__ (work)

_____ (other)

LANEY & MYATT FIRM

BY: _____Mark Laney_____
Mark W. Laney   SBN: 11892500
Jody L. Myatt   SBN: 24039084

I/We certify that I/we have received an executed copy of the above agreement.

X ___Cassie  Pointer_____   __3-26-09__
Signature                                  Date

X _____
Signature                                  Date

October 2008

# LANEY & MYATT
## LAW FIRM

600 ASH STREET
PLAINVIEW, TEXAS 79072-8093

(806) 293-2618      FAX (806) 293-8802

www.laneymyatt.com

**MARK W. LANEY, LAWYER**
mark@laneymyatt.com

BOARD CERTIFIED - TEXAS BOARD OF LEGAL SPECIALIZATION
PERSONAL INJURY TRIAL LAW, SINCE 1982
CIVIL TRIAL LAW, SINCE 1982
STATE BAR COLLEGE OF TEXAS
CHARTER MEMBER, SINCE 1983
FELLOW, SINCE 1995

**JODY L. MYATT, LAWYER**
jody@laneymyatt.com

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HALE | § |

## ATTORNEY RETAINER AGREEMENT-CONTINGENT FEE

CLIENT(S): __Heidi Maupin__

ON BEHALF OF:_____

1.      For services rendered and to be rendered in this matter by the offices of Laney & Myatt Law Firm, the undersigned on behalf of himself/herself and/or the above referenced client (whether one or more) retains this law firm to assert claims against: __Verla Barrett individually and/or d/b/a Big V Construction_____, any applicable insurance coverage, and whomever (including corporations or government bodies) is probably liable for all damages (actual, consequential, special and/or punitive) and injuries or other damages resulting from the incident of__issues related to employment including, but not limited to, unpaid and underpaid wages,__ which occurred __throughout my employment with Big v Construction,__ in __Quitaque____, __Briscoe____ County, __Texas____, hereafter referred to as the "claim".

2.      Attorneys, their agents and employees, are authorized to take all steps deemed by them to be necessary and appropriate to obtain a satisfactory result, including but not limited to securing a complete investigation, instituting legal proceedings, employing consultants, expert witnesses, and associate counsel, entering into settlement negotiations, preparing settlement brochures, preparing for and/or PROCEEDING TO TRIAL and/or DISCONTINUING LITIGATION.

        Attorneys agree not to settle or compromise the case without the client's approval of the terms and form of the settlement. The client agrees to cease all communications with all third parties regarding the subject matter of this claim and further agrees not to enter into any settlement negotiations or agreements regarding such claims or matters which could impact on such claims, without the knowledge and written consent of the attorneys. If such settlement does occur, however, the full attorneys' fees shall remain as set forth below.

INITIALS: _____

INITIALS: _____

October 2008

3.      For the services rendered, the client agrees to pay the attorneys a fee which shall be CONTINGENT ON WHAT IS RECOVERED in this matter by way of settlement, judgment or otherwise, to be computed as follows:

    a.      **40% of all sums recovered**

    b.      50% of **all sums recovered** in the event a Notice of Appeal is filed by any party or jury selection begins for a second trial.

        Provided, further, in the event of an appeal by any party, client understands and agrees that client will hire other appellate counsel (separate from attorneys), on an hourly basis, to handle or respond to any appeal of this case. Further, attorneys agree that all sums paid by client for appellate attorney fees to other counsel shall be taken as a credit and deducted from any contingent fees owed attorneys. If, instead, attorneys elect to handle the appeal, there will be no hourly fees, but the contingent fee shall be 50% of all sums recovered after an appeal bond is filed or an appeal is otherwise perfected.

        **"All sums recovered"** includes everything recovered, (regardless of how it may be designated), including but not limited to, medical expenses and/or the value of all benefits received (for example, payment made directly to medical service providers for medical expenses). Personal Injury Protection (PIP) and Medical Payments (MEDPAY) benefits are not usually contested. While you may wish to file for these benefits on your own (in which case there is no fee), most clients want to turn everything over to us. If you want us to file the bills and information for lost wages and, if the insurance company does not dispute coverage for PIP/MEDPAY, then the above fees do not apply; however, there may be an administrative charge of up to 10% for our processing these bills and lost wage information for payment. If the insurance carrier denies coverage or payment and we have to take action so that PIP benefits will be paid, the attorneys' fees, as set forth in the above percentages, will apply.

        IN ADDITION TO THE ABOVE FEES, client shall pay to attorneys, OUT OF THE CLIENT'S SHARE OF THE RECOVERY, all court costs, advances, and expenses advanced by the attorneys in connection with this matter. The attorneys are authorized to incur such expenses as they in their sole and exclusive judgment deem reasonable and necessary to accomplish a satisfactory resolution of the claim and are authorized to advance such expenses on behalf of client. Said expenses shall include, but not be limited to, a one time administrative cost charge of one hundred twenty-five dollars, expenses for court costs, court reporter services, investigation, travel and lodging, physician and/or expert witness fees, consultant fees, settlement and trial exhibits, illustrations, models, diagrams, photography, videoing, copies (at twenty-five cents per in house copy, five dollars for in house color copy), equipment expenses, video tape, long distance charges (at a flat rate of three dollars per call regardless of length), and fax expense (at a flat rate of six dollars per transmission sent regardless of length) and mileage of a minimum of fifty cents per mile, up to the same rate allowed by the Internal Revenue Service for business mileage. This rate may vary each year. All other expenses are billed in the exact amounts incurred and will be documented for Client's review at the closing of any recovery on the case. Client agrees that attorneys may borrow funds from a commercial bank to finance or pay such court costs and litigation expenses and the reasonable interest charged by the bank on such borrowed funds will be added to the court costs and litigation expenses to be deducted from the settlement or recovery. At the expiration of one year from the date of signing of this contract, if the case is not concluded, interest on the outstanding expenses not otherwise borrowed from a commercial bank, shall begin to accrue at the rate of 8% per annum to be paid to the attorneys, out of client's share of recovery. Client agrees and authorizes a reserve amount to be withheld out of the final disbursement of the recovery of not more than 15% of the net recovery due client, to pay any potential outstanding expenses that have been incurred but not yet been billed, with the balance of the reserve, after deducting any case expenses billed after disbursement, to be disbursed to the client within one hundred and twenty (120) days. When any costs or expenses are common to, and incurred on behalf of, more than one client, Client authorizes Attorneys to apportioned such common expenses among the common clients on the pro rata basis that each client's recovery bears to the total recovery of all common clients.

INITIALS:      X H M

INITIALS:      _____

October 2008

In the event of multiple claimants, clients waive any conflict of interest and desire attorney to represent all claimants to this contract. Provided frouther, clients agree they will decide how to split settlement funds among them, and that attorney will not play any part in the decision of how that split will be made.

In the event a subrogation claim is made by any third party, we reserve the right to negotiate for and claim further attorneys' fees from such third party out of the monies otherwise payable to that third party. Subrogation is a claim by a third party for reimbursement of monies paid. For example, a hospitalization insurance carrier makes payment for medical bills incurred as a result of an automobile accident. The hospitalization carrier may have a right to request reimbursement from the party at fault or his insurance carrier. We reserve a similar right for additional fees in the event the client requests us to negotiate and obtain a reduction in medical expenses otherwise owed to the various medical service providers.

In the event the law changes requiring payment of sales tax or any other tax on recoveries or on attorneys' fees, the client shall pay such tax out of the client's share of the recovery.

If, at the final disposition of the case, nothing is recovered on behalf of the client, the client will not owe the attorneys a fee.

4.     At the final disposition of the case, the clients agree promptly to execute such settlement documents as are recommended by the attorney and properly and promptly to endorse any settlement drafts or checks, and the attorneys shall disburse to the client the client's share of the recovery after deducting their fee as described in paragraph 3, after deducting all expenses as defined in paragraph 3 and after deducting all debts incurred by the client remaining unpaid, including but not limited to, those as defined in paragraph 7.

5.     In the event that a structured settlement is negotiated, the client approves and authorizes the attorneys' fee to be based upon the PRESENT VALUE BENEFIT of the structured settlement to the client rather than upon the present market cost of such a settlement. (The PRESENT VALUE BENEFIT shall be determined by applying appropriate discount rates that consider the after tax benefits of the negotiated structure settlement to the plaintiff.) The client understands that the PRESENT VALUE BENEFIT of a structured settlement to the client might exceed the present market cost at which the defendant can purchase a structured settlement package. The attorney retains the sole right to take the attorneys' fee in cash at the time of settlement or in deferred payments, regardless of the manner in which the client's recovery is paid. Further, attorney may structure their fees in a qualified structure, even if Clients do not structure their recovery.

6.     THE CLIENT HEREBY GRANTS THE ATTORNEYS A LIEN ON THIS CAUSE OF ACTION, and a lien on any proceeds and any judgments recovered in connection with this cause of action as security for the payment of attorneys' fees and expenses as contracted for herein.

7.     Client acknowledges and agrees that, regardless of the outcome of this case, the attorneys do not assume liability for nor agree to pay from the attorneys' fee any debts incurred by the client including, but not limited to expenses incurred for medical care, nursing, special aids and transportation, as well as any medical insurance and/or workers' compensation subrogations and/or Medicare/Medicaid reimbursement and/or hospital liens arising as a result of the incident giving rise to the claim. Client acknowledges and understands that, to the extent any of the foregoing claims, debts, or expenses are not paid or assumed by the defendants as part of the terms of the final disposition of this case, these debts and expenses shall remain the client's sole responsibility. Client does grant to the attorneys the right and power to deduct from any settlement and pay over all expenses of a medical nature (e.g., physicians, hospitals, ambulances, prosthetics, etc.) direct to the provider, as well as to pay any expenses for which client has signed any authorization or assignment to the extent that funds are available after deduction of attorneys' fees from all sums recovered, which includes without limitation all recovery made for medical expenses.

INITIALS:     X ḷM

INITIALS:     _____

October 2008

ATTORNEY RETAINER AGREEMENT-CONTINGENT FEE

PAGE 4 OF 6

8.       THE CLIENT AGREES THAT THE ATTORNEYS RETAIN THE RIGHT AT ANY TIME FOLLOWING INVESTIGATION, DISCOVERY, OR LEGAL RESEARCH, TO RELEASE THEMSELVES FROM THIS CONTRACT AND WITHDRAW FROM THE REPRESENTATION OF THE CLIENT, IF IT APPEARS TO THE ATTORNEYS THAT CIRCUMSTANCES HAVE DEVELOPED WHICH HINDER CONTINUED EFFECTIVE LITIGATION OF THE CASE; THAT CONTINUED LITIGATION WOULD NOT BE COST EFFECTIVE OR RESULT IN A SUSTAINABLE OR COLLECTABLE JUDGMENT; OR THE CLIENT ENGAGES IN CONDUCT WHICH RENDERS IT UNREASONABLY DIFFICULT FOR THE ATTORNEYS TO CARRY OUT THE EMPLOYMENT EFFECTIVELY. IN THE EVENT OF SUCH A WITHDRAWAL, THE ATTORNEYS WILL RETAIN A LIEN ON THE CASE TO THE EXTENT OF THE EXPENSES AND COSTS WHICH HAVE BEEN ADVANCED ON THE CLIENT'S BEHALF, TOGETHER WITH A FEE CALCULATED IN QUANTUM MERUIT. THE CLIENT AGREES TO PROTECT SUCH EXPENSES. COSTS AND FEES OUT OF ANY RECOVERY ULTIMATELY OBTAINED IN THE CASE. If client misrepresents facts to the attorneys that create a substantially different and less valuable case, the attorneys have the option of charging client on an hourly basis at not less than usual hourly charges for attorneys and assistants in current litigation in the office and to receive interest at the rate of twelve percent per annum on all expenses advanced for the client. If withdrawal is necessitated by the client's misconduct, the attorneys shall be entitled to the full contingent fee, as well as expenses and costs as set forth above. Any dispute arising between the Client and the Attorneys, if not resolved amicably, shall be resolved by mediation.

9.       All exhibits and trial models shall remain the work product of the attorneys and control thereof shall remain with the attorneys. The client authorizes the attorneys to retain and utilize exhibits, documents and materials developed in this case as teaching and demonstration aids in lectures and professional presentations and publications, subject to provisions being made to protect the client's privacy.

10.      The attorneys make no representations or guarantees regarding the tax consequences of any recovery obtained on behalf of the client and advises client to SEEK YOUR OWN TAX ADVICE FROM A QUALIFIED TAX ADVISOR.

11.      This contract is entered into in Hale County, Texas, which shall also be the place of performance and payment in accordance with the terms of the contract. Furthermore, this contract contains all the agreements of the parties, and may not be amended, except in writing and executed by all parties.

12.      If Client has been referred to Attorneys or Attorneys have been associated by another attorney not in the same firm as Attorneys, Client acknowledges that such referral or association was authorized by Client in advance, and, reaffirms Client's consent to the division of fees, as set forth in the Addendum to this Contract, which is acknowledged by Client initialing the same.

13.      Client hereby authorizes Attorney to refer or associate another attorney not in the same firm as Attorneys, if Attorney deems it to be in Client's best interest. If Attorneys refer Client to, or associate another attorney on Client's case, Client further authorizes a division of attorneys' fees between the other attorney and Attorneys, as set forth in the attached Addendum to this Contract and, by initialing such Addendum, Client acknowledges disclosure of the same and consents to Attorneys entering into such an arrangement.

14.      If Attorneys do not now contemplate such a referral or association, Client continues Client's authorization for Attorney to associate or refer to any other attorney not in the same firm, any time during the handling of Client's case, as Attorneys might deem advisable to be in Client's best interest, in which event Attorneys shall disclose same to and obtain Client's consent in advance of such referral or association.

15.      **In any event, if more than one attorney not in the same firm is involved with and/or working on Client's case, either by referral or association by or to Attorneys, the total attorneys' fees, for all attorneys, shall not increase and shall not exceed the amount contracted for above.**

INITIALS:       X  HM

INITIALS:       _____

October 2008

ATTORNEY RETAINER AGREEMENT-CONTINGENT FEE
PAGE 5 OF 6

16.    The client acknowledges that the attorneys have made NO GUARANTEE regarding the successful resolution of said cause of action, and all expressions relative thereto are matters of attorneys' opinion only and shall not be considered as express or implied warranties of the claim's outcome.

17.    The client agrees to deposit the amount of $ ⎯0⎯ as a retainer to be placed in attorneys' trust account. Said amount is to be used by attorney for out of pocket expenses incurred by Attorneys as described above.

18.    The client/clients acknowledge being advised of the right and opportunity to use some other form of fee arrangement (such as hourly, per diem, fixed, etc.), but wish to proceed on the "contingent fee" basis set forth above.

<Signature page to follow>

INITIALS:    X H.M.

INITIALS:    _____

October 2008

ATTORNEY RETAINER AGREEMENT-CONTINGENT FEE
PAGE 6 OF 6

WE HAVE READ THE ABOVE AGREEMENT BEFORE SIGNING IT.

Signed this **3rd** day of _____**April**_____, 20**09**.

CLIENT: _____Heidi Maypin_____

SIGNATURE: x _Heidi May_____

S.S.#: _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_   BIRTHDATE: _12-10-68_ DRIVER'S LICENSE: _____

CLIENT: _____

SIGNATURE: **X** _____

S.S.#:_____   BIRTHDATE:_____   DRIVER'S LICENSE: _____

ADDRESS: _____

_____

TELEPHONE: _____ (home)

_____ (work)

_____ (other)

LANEY & MYATT FIRM

BY: _____Mark W. Laney_____

Mark W. Laney   SBN: 11892500
Jody L. Myatt   SBN: 24039084

I/We certify that I/we have received an executed copy of the above agreement.

x _Heidi May_____         4/3/09
Signature                 Date

**X** _____
Signature                 Date

October 2008

# Exhibit A
# (Filed under Seal)
# (Settlement Agreement)
# (Proposed Distribution)

THIS EXHIBIT IS BEING FILED UNDER SEAL

# Exhibit B
# (Itemization)

Law Offices
of
# PHILIP R. RUSS

## ATTORNEYS AT LAW

Philip R. Russ
Admitted to Practice
Texas and Oklahoma

Felipe Zavala
felipe.zavala@russlawfirm.com
Admitted to Practice in Texas

Tax ID #75-1742305

Re:   Case No: **2:09-CV-83-J**: *Cassie Pointer, et al v. Big V.*

## STATEMENT

| | | |
|---|---|---|
| | To conferences, correspondence and miscellaneous professional services rendered during a period from April 1st, 2009 to and including July 23, 2010, including: | |
| 4/1/09 | Draft Pointer v. Big V and file complaint (1.6); | |
| 4/21/09 | Review letter draft to clients, email to Mr. Laney for review (.6); | |
| 4/24/09 | Draft written discovery, interrogatories, request for admission, request to produce (2.2); | |
| 5/19/09 | Receipt of 2 consents, draft notice and file online; email from Laney's office re: Cassie Pointer (.8); | |
| 5/22/09 | Review counterclaim; draft reply to counterclaim (.9); | |
| 5/27/09 | Emails to/from Mark Laney re: status; revise & finalize Reply to Counterclaim (.7); | |
| 5/28/09 | Motion 7 Memo for Notice, Appendix in Support; confer w/Kelly Utsinger re: same (3.4); | |
| 5/29/09 | Finalize & File Motion & Memo for Mail-out, Appendix (2.6); | |
| 6/03/09 | Draft 26(f) Conf. Report, confer w/Kelly Utsinger re: same (.6); | |
| 6/17/09 | Draft 26(a)(1) disclosure, email Mark Laney re: same for comment (.7); | |
| 7/20/09 | Correct & Finalize interrogatories, request for admissions and request to produce; correspondence to opposing counsel, send out discovery certified (1.1); | |
| 7/24/09 | Draft Motion to Appear and Show cause, review documents and pleadings re: same; email Mark Laney re: same (1.4); | |

| | | |
|---|---|---|
| 7/28/09 | Revise and finalize Motion to show Cause; review drafts of affidavits in support (.9); | |
| **2010** | | |
| 1/06/10 | Telephone conference w/Kelly Utsinger, leave wd; Revise Motion to Show Cause; Draft Motion to Extend Deadlines; Issue Subpoena Duces Tecum to Lighthouse Electric; T/Conference w/Lighthouse counsel (2.3); | |
| 1/07/10 | Motion to Show Cause, review grand jury letter from D.A., subpoena to Lighthouse; Depo Notice to Verla Barrett &notice as custodian of records; t/conference w/Kelly Utsinger; t/conference with mark and coordinate to service on Lighthouse - forward Notice for Big V to Kelly Utsinger (2.9) | |
| 01/08/10 | Motion to Extend Deadlines; finalize Subpoena on Lighthouse Counsel; email Notice and correspondence to Kelly Utsinger & serve letter D.A. (1.8); | |
| 01/09/10 | Review Big V pay records; work on demand; attempt to file Motion to Show Cause online (2.7); | |
| 01/11/10 | Motion to Show Cause/Contempt filed online; Proposed Order circulated; Schedule of Damages prepared; t/conference w/Mark Laney re: Status (1.8); | |
| 1/12/10 | t/conference w/Mark Laney re: status; Review Settlement Demand; correspondence to Kelly Utsinger, t/conference w/Kelly Utsinger (.9); | |
| 1/13/10 | Document review and deposition preparation re: lighthouse recorder; conference w/Kelly Utsinger (1.7); | |
| 1/14/10 | Travel to Plainview, Texas, document review of Lighthouse documents produced at Laney Law Offices, depose Billy Harbin, general manager Lighthouse; conference w/Kelly Utsinger and Mark Laney; return to Amarillo, Texas (8.0); | |
| 1/15/10 | Attend document production at Underwood Law Firm, document of Big V. Construction; Conference w/Mark Laney re: same; obtain copies; prepay and serve Amended Notice of Depo. for Verla Barrett (5.3); | |
| 1/18/10 | Prepare for depo. Wednesday of Verla Barrett; t/conference with Kelly Utsinger re: documents (2.6); | |
| 1/19/10 | Pick up Cassie Pointer at airport, confer re: depo tomorrow; depo prep. (2.1); | |
| 1/20/10 | Depo prep., depose Verla Barrett; identify records (9.1); | |
| 1/26/10 | Draft Supplemental Motion for Sanctions, gather Exhibits for Appendix in Support (1.8); | |
| 1/27/10 | Finalize Supplemental Motion to Approve and Show Cause; prepare another Request to Extend Scheduling Deadlines & Statute of Limitations due to Failure to comply w/Order of Court; Finalize Appendix in Support, File online (5.6); | |

| 1/28/10 | Draft Motion for Partial Summary Judgment; Memo in Support; Related research (4.6); | |
|---------|---|---|
| 2/02/10 | Receipt and review of Response to Motion for Sanctions (.6) | |
| 2/02/10 | Revise and correct Plaintiffs Motion for Partial Summary Judgment (1.1) | |
| 2/09/10 | Check rule and commentaries on Subpoena in OKC on Big V insurance agent; L/D/Telephone conference w/Fellers, Snider re: OK practice in Western District re Service (.4) | |
| 2/10/10 | Prepare Subpoena's to Webb, Young & Webb (.4); | |
| 2/22/10 | Email from Mark Laney, re: costs; confirm Verla's Depo Thursday (.3); | |
| 3/02/10 | Depo. preparation, review documents, outline area's to cover, review Motion for Partial Summary Judgment (1.6); | |
| 3/03/10 | Review Verla's Depo; confer w/Mark; Finalize Motion for Partial Summary Judgment (4.2); | |
| 3/04/10 | Work on Motion for Partial Summary Judgment; Memo in support and Appendix; Correspondence to Kelly Utsinger; proposed Order (4.7); | |
| 3/05/10 | Finalize Motion, Memo and Appendix re: Partial Summary Judgment; file online (2.3); | |
| 3/10/10 | Research re: retaliation by Verla Barrett (1.7); | |
| 3/22/10 | T/conference w/Kelly Utsinger re: case (.5); | |
| 3/26/10 | Conf. w/Kelly Utsinger re: part of his cc: of Appendix missing; rectify deficiency, supplement online; finalize, execute and file Response online (3.6); | |
| 5/18/10 | Draft Motion to Dismiss Counterclaims and Memo in Support and to Strike Affirmative Defenses; research re: same (3.9); | |
| 5/19/10 | Conf. W/Kelly Utsinger re: Motion to Dismiss; Discuss Mediation & Mediators (.6); | |
| 5/20/10 | Revise Motion to Dismiss to Dismiss Counterclaims; attach Exhibits, confer with Mr. Laney, file online (1.4) | |
| 5/21/10 | Revise Motion to Dismiss Affirmative Defenses; Finalize and file online (1.2) | |
| 06/09/10 | Preparation of Mediation Position Notebook for Mediator (3.1); | |
| 6/11/10 | Prepare for mediation; receive and review Bog V Response to Motion to Strike Affirmative Defenses and Counterclaims (1.1); | |
| 6/14/10 | Confer with Mr. Laney; confer with clients; attend mediation, case settled (7.5); | |
| | | |
| | (110.9 hours @ $300.00/hour) | |
| | Total fees | $33,270.00 |

| | | |
|---|---|---|
| | To miscellaneous expenses incurred and advanced on your behalf by Philip R. Russ and Mark Laney, relative to said case, not heretofore reimbursed, including reproduction expenses, long distance toll charges, postage, filing fees, travel expenses, etc. | $4,809.86 |
| | | |
| | **Grand Total Due** | **$38,079.86** |